[Civ. No. 40243. First Dist., Div. Three. Mar. 18, 1977.]

TRANSACTRON, INC. et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD,
NORMA SPEARS et al., Respondents.

**COUNSEL**

Hanna, Brophy, MacLean, McAleer & Jensen and Robert L. McCartney for Petitioners.

William L. Veen for Respondents.

## OPINION

SCOTT, J.—Sharon Cornelius, while hiding in the women's rest room at her place of employment shortly after arriving for work, was shot and killed by her boyfriend. The Workers' Compensation Appeals Board (WCAB), in affirming the opinion of the workers' compensation judge, found that the fatal injuries were sustained in the course and scope of and arose out of Sharon's employment, and awarded compensation to her dependents.

Zenith National Insurance Company, the workers' compensation carrier for decedent's employer, Transactron, Inc., contends that the shooting which caused Sharon's death arose out of a personal grievance unconnected with her employment, and further, that decedent was not exposed to a special risk by her employment and the shooting occurred merely by chance during working hours and at decedent's place of employment.

Sharon was a receptionist-secretary employed by Transactron at the time of her death. On April 22, 1975, she arrived for work at approximately 8:30 a.m. As she entered the lobby she bent forward near her desk, looking through a window, and said words to the effect, "There he comes." She then left, apparently for the women's rest room. The assailant, Vaughn Brusard, entered the lobby and asked another employee, Sandra Wilson, for Sharon. He seemed tense but not unusual. Another employee said that she thought Sharon was in the washroom. Wilson told Brusard that she would check.

The women's rest room was located near the end of the passageway extending from the lobby in a work area confined to employees. Persons wanting to see an employee would customarily wait in the lobby while the employee was buzzed by the receptionist to come to the lobby. The door to the rest room was marked, but from the lobby would appear to a person as just another door. The corridor leading to the rest room was private and would not ordinarily be used by uninvited persons. There was only one entrance to the women's rest room and two rear exits from the building, one next to the work area and the other beyond the women's rest room.

Wilson entered the rest room to find Sharon crying. She expressed her fear of Brusard and asked Wilson to call the police. Wilson left the rest room and stopped at the office of her supervisor to ask for advice. At this point, Wilson noted that the assailant was standing near the office. As she

explained the situation to the supervisor, she saw Brusard go by the office door in the direction of the rest room. The supervisor followed him to the rest room, saying, "You can't go in there—that's the women's rest room." Wilson heard conversation and then the words, "Look out, he's got a gun," followed by light footsteps and three shots. Wilson testified that no security measures existed other than the interception of callers at the reception desk.

The WCAB found evidence to justify the statement of the workers' compensation judge that "in the instant case, however, factors associated with the employment contributed to the injury, since in the absence of the unwitting assistance of decedent's co-employee in revealing decedent's whereabouts to the assailant, it is quite possible that the attack could not have occurred. The employment, therefore, was not merely a neutral or passive factor with respect to the injury; rather, the actions of a co-employee increased the risk of harm to decedent and in fact contributed to her death." The board relied on *Madin* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 90 [292 P.2d 892], and *California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd. (Schick)* (1968) 68 Cal.2d 157 [65 Cal.Rptr. 155, 436 P.2d 67].

■ To be compensable, Labor Code section 3600 requires that the injury must arise out of and be in the course of employment. Since it is conceded that the shooting was in the course of her employment, the sole issue here is whether Sharon's death *arose out of her employment.* All reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee under the liberal construction rule. (Lab. Code, § 3202; *Lundberg* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 436, 439 [71 Cal.Rptr. 684, 445 P.2d 300]; *California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd. (Schick), supra,* 68 Cal.2d at p. 161.) The test of substantiality of evidence must be measured on the basis of the entire record, rather than by simply isolating evidence supportive of the board's determination. (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 638-639, fn. 22 [82 Cal.Rptr. 208, 463 P.2d 432].) Therefore, the question on review is whether the board's finding on this issue of application of law to uncontradicted facts is supported by the entire record.

■ On the issue of whether an injury arose out of the employment, the *Madin* court stated: "If we look for a causal connection between the employment and the injury, such connection need not be the sole cause; it is sufficient if it is a contributory cause." (46 Cal.2d at p. 92.) The court

further stated (at pp. 94-95): "Where the injury occurs on the employer's premises, while the employee is in the course of the employment, the injury arises out of the employment unless the connection is so remote from the employment that it is not an incident of it." The *Schick* court stated that "a sufficient causal connection between the injury and the employment is shown where the employment was a contributory cause of the injury, that where the injury occurs on the employer's premises while the employee is in the course of his employment the injury also arises out of the employment unless the connection is so remote from the employment that it is not an incident thereof, and that an injury can arise out of the employment even though the employer had no connection with or control over the force which caused the injury. It was also held that an injury is compensable where the employee is brought into a position of danger by the employment even though the risk could not have been foreseen by the employer, and, finally, that reasonable doubts as to whether an injury is compensable are to be resolved in favor of the employee." (68 Cal.2d at p. 160.)

In *Schick*, the victim was lured in an elaborate scheme to her former husband's apartment, ostensibly to measure a table for pads, her normal employment activity. There, in an isolated location, Schick killed her. The court stated (at p. 161): "We cannot say that the assault upon her was so remotely connected with her employment that as a matter of law it must be held not to arise therefrom." In *Madin*, the injured employees were 24-hour a day caretakers on the employer's property when a runaway bulldozer, started by unrelated juveniles, came onto the property and struck them. The employees, as a condition of their employment, were required to remain upon the premises. The court found the "arising out of" factor satisfied by numerous cases in which the instrumentality of harm was unrelated to the employer and out of his control. (46 Cal.2d at p. 93.)

The *Schick* court placed primary emphasis on three observations drawn from the fact situation. First, the nature of the victim's ordinary duties placed her in an isolated position. Second, that fact formed an integral part of the assailant's scheme, facilitating the assault and proximately contributing to the death. Had the attack occurred in a more public place, a rescuer might have intervened. Third, evidence that the underlying dispute arose from personal animosity is irrelevant if the employee's duties place her in a position of peculiar risk. (68 Cal.2d at pp. 160-162.)

The *Schick* court distinguished, and thereby impliedly approved, *Lykins* v. *Industrial Acc. Com.* (1960) 25 Cal.Comp.Cases 194, and *Howard* v. *W.C.A.B.* (1966) 31 Cal.Comp.Cases 358. The court noted that in *Lykins,* where a waitress was shot by her husband in the restaurant where she worked, the assault occurred merely by chance during her working hours; and in *Howard,* where a bartender was attacked by the husband of a cocktail waitress while leaving his place of employment, the employment did not place the bartender in a position of danger. The facts of the case at bench are more akin to those of *Lykins* and *Howard* than *Schick* or *Madin.*

Sharon's duties were to act as a receptionist in the lobby of a building frequented by business invitees. It was not an isolated position, but one where contact with the public would be frequent and normal. The nature of her employment, if anything, would tend to deter an assailant from seeking her at the jobsite for exactly the reason noted by the *Schick* court: fear of intervention by strangers and coworkers. Indeed, such intervention occurred. ■ The proper inference to be drawn is that the nature of the decedent's duties played no part in the assailant's evident intent to assault her. Her probable presence on the employer's property during business hours could properly be inferred to have been within his knowledge. However, it was not a part of any scheme or plan, it was merely a fact which provided a place for the assailant to do what he did. The nature of her duties was not the proximate cause of her injury for it merely provided a stage for the event. In other words, the employment was not a contributory cause of the injury. (*Madin* v. *Industrial Acc. Com., supra,* 46 Cal.2d at p. 92; see also *Wiseman* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 570, 573 [297 P.2d 649].)

Reliance was placed by the board on the remark of Sharon's fellow employee that she was in the rest room. The board stated: "If unwittingly another employee had not directed the assailant to her place of concealment she might have escaped harm. As it was, applicant was placed in a trap from which there was no escape." We do not consider this fact to be a significant factor in the determination of whether the injury arose out of her employment. To predicate the right to compensation on the mere identification of the place where an employee is located on the employer's premises would lead inevitably to the conclusion that there is a compensable injury whenever a personal grievance results in an assault on the employer's premises during ordinary business hours.

The assailant was told to stay in the lobby area by the witness Wilson. Later, when he had entered the private hallway, Wilson's supervisor attempted to stop him. The vice president of the company testified that strangers were not allowed in the work area without permission. The clear inference is that the assailant might have shot the decedent at any location as well as her employer's premises. The fact that an employee disclosed her location to allow the incident to take place at that exact time and location is of no moment. There was no aspect of the victim's employment as a receptionist which intrinsically raised the level of risk to her from a personally motivated assault.

The role of employment in the shooting is inconsequential when it merely provides a place where the assailant can find the victim. (See *Perry* v. *W.C.A.B.* (1970) 35 Cal.Comp.Cases 375.) Where the nature of the employee's duties places her in no particularly dangerous or isolated position, or where the risk of harm is not limited to the place of employment and where the attack occurs on the premises not because the victim was performing the duties of employment at the time of assault but because she merely was there, and where the nature of employment was not part of an assailant's plan to isolate or trap the victim, the injury does not arise out of the employment. (*California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd. (Schick), supra,* 68 Cal.2d at pp. 160-161; *Lykins* v. *Industrial Acc. Com., supra,* 25 Cal. Comp.Cases 194; *Howard* v. *W.C.A.B., supra,* 31 Cal.Comp.Cases 358; *Morgan* v. *W.C.A.B.* (1971) 36 Cal.Comp.Cases 325; *Madin* v. *Industrial Acc. Com., supra,* 46 Cal.2d 90.)

We hold that as a matter of law the connection between the assault and Sharon's employment was so remote that it cannot be said to arise therefrom.

The award is annulled.

Draper, P. J., and Devine, J.,* concurred.

The petition of respondent Spears for a hearing by the Supreme Court was denied May 12, 1977.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.