TIMOTHY FAIR, JR. *v.* PEOPLE'S SAVINGS BANK ET AL.
(13247)

HEALEY, SHEA, GLASS, COVELLO and HULL, Js.

Argued March 10—decision released May 24, 1988

---

*James L. Pomeranz,* with whom, on the brief, was *Anne M. Kelly,* for the appellants (named defendant).

*Elaine M. Scanlon,* with whom, on the brief, was *Howard T. Owens, Jr.,* for the appellee (plaintiff).

GLASS, J. The named defendant appeals[1] from the decision of the workers' compensation review division reversing the denial of an award to the plaintiff, Timothy Fair, Jr., by the workers' compensation commissioner (commissioner). On appeal, the defendant claims that the compensation review division erred in concluding that the plaintiff's decedent's injury and death arose out of her employment. We find error.

This matter was submitted on a stipulation of facts to the commissioner for the fourth district, who adopted the stipulation. The commissioner made findings that Gail Rogers, the decedent, was employed by the defendant, the People's Savings Bank (bank). The decedent and Timothy Fair, her boyfriend, had lived together until December, 1980, shortly before her death. Fair did not work for the bank. During the summer of 1980, the relationship between Fair and the decedent deteriorated, and in late December, 1980, the decedent told Fair that she was leaving him.

On December 29, 1980, while she was working at the bank, the decedent received harassing telephone calls from Fair. Fair also went to the bank that morning, threatened the decedent and was escorted out of the bank by bank security personnel. The decedent, fearing for her safety, decided to leave her job and went to the bank's personnel office to resign. While the decedent was in the process of resigning, Fair came back to the bank and asked the decedent's supervisor where she was at the time. The supervisor told him that the

---

[1] The action was originally brought against the People's Savings Bank and the Pacific Employers Insurance Company. People's Savings Bank brought this appeal and hereinafter will be referred to as the defendant.

decedent was in the personnel office. The supervisor did not notify the personnel office or the bank security department that Fair had returned to the bank. Meanwhile, Annie Robinson, a bank personnel employee, conducted an "exit interview," and arranged for the decedent's departure. On two occasions Robinson attempted to notify bank security personnel that Fair presented a threat to the decedent. A co-employee, Catrina Peters, was asked to assist the decedent in getting home. At about 1:15 p.m., Fair entered the personnel office, demanded to see the decedent and ordered Peters out of the office. She refused to leave and attempted to telephone for assistance. Fair then pulled a .38 caliber revolver out from his clothing and shot the decedent in the head. The decedent died on January 7, 1981, from the injuries that she had sustained as a result of the shooting. Timothy Fair, Jr., born on April 25, 1980, is the plaintiff and the sole child and dependent of the decedent. Fair, the decedent's assailant, is the father of Timothy Fair, Jr.

On the basis of these findings the commissioner concluded that the decedent's death did not arise out of her employment and dismissed the plaintiff's claim. The plaintiff appealed to the review division, and the review division affirmed the findings of the commissioner, but concluded that the decedent's death did arise out of her employment and held that the claim was compensable. The defendant appealed the decision of the review division to the Appellate Court, and the case was transferred to this court pursuant to Practice Book § 4023. On appeal, the defendant claims that the review division erred in concluding that the decedent's death arose out of and in the course of her employment. The defendant argues that the assault on the decedent was inevitable and that the animosity between Fair and the decedent, culminating in the assault, was imported into the decedent's employment from her domestic and private life. We agree.

## I

At the outset, we must determine the appropriate standard of review when a decision of a commissioner is appealed to the compensation review division. A decision of a commissioner granting or denying an award may be appealed to the review division pursuant to General Statutes § 31-301 (a), which provides in pertinent part: "At any time within ten days after entry of such award by the commissioner . . . either party may appeal therefrom to the compensation review division . . . . Such appeal shall be heard by a panel of the compensation review division . . . . *The compensation review division shall hear the appeal on the record of the hearing before the commissioner,* provided, if it is shown to the satisfaction of the division that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the compensation review division may hear additional evidence or testimony. Upon the final determination of the appeal by the compensation review division . . . it shall issue its decision, affirming, modifying or reversing the decision of the commissioner. The decision of the compensation review division shall include its findings and award and conclusions of law. . . ." (Emphasis added.)

It is clear that under General Statutes § 31-301 (a) and § 31-301-8 of the Regulations of Connecticut State Agencies[2] the review division's hearing of an appeal from the commissioner is not a de novo hearing of the

[2] "[Regs., Conn. State Agencies] Sec. 31-301-8. · FUNCTION OF COMPENSATION REVIEW DIVISION

"Ordinarily, appeals are heard by the compensation review division upon the certified copy of the record filed by the commissioner. In such cases the division will not retry the facts or hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether the finding should be corrected,

facts. Although the review division may take additional material evidence, this is proper only if it is shown to its satisfaction that good reasons exist as to why the evidence was not presented to the commissioner. Otherwise, it is obliged to hear the appeal on the record and not "retry the facts." See Regs., Conn. State Agencies § 31-301-8. We have stated: "[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. *Czeplicki* v. *Fafnir Bearing Co.,* 137 Conn. 454, 457, 78 A.2d 339 (1951). The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. *Mathurin* v. *Putnam,* 136 Conn. 361, 366, 71 A.2d 599 (1950)." *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 117–18, 411 A.2d 924 (1979); *Murchison* v. *Skinner Precision Industries, Inc.,* 162 Conn. 142, 145, 291 A.2d 743 (1972).

Moreover, the United States Supreme Court has held that "[i]n determining whether a particular injury arose out of and in the course of employment, the Deputy Commissioner must necessarily draw an inference from what he has found to be the basic facts. The propriety of that inference, of course, is vital to the validity of the order subsequently entered. But the scope of judicial review of that inference is sharply limited by the foregoing statutory provisions. If supported by evidence and not inconsistent with the law, the Deputy Commissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more

or whether there was any evidence to support in law the conclusion reached. It cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses. Its power in the corrections of the finding of the commissioner is analogous to, and its method of correcting the finding similar to the power and method of the Supreme Court in correcting the findings of the trial court."

reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the Deputy Commissioner is factually questionable. *Voehl* v. *Indemnity Ins. Co.,* [288 U.S. 162, 166, 53 S. Ct. 380, 77 L. Ed. 676 (1933)]; *Del Vecchio* v. *Bowers,* 296 U.S. 280, 287 [56 S. Ct. 190, 80 L. Ed. 229 (1935)]; *South Chicago Co.* v. *Bassett,* 309 U.S. 251, 257–258 [60 S. Ct. 544, 84 L. Ed. 732 (1940)]; *Parker* v. *Motor Boat Sales,* 314 U.S. 244, 246 [62 S. Ct. 221, 86 L. Ed. 184 (1941), reh. denied, 314 U.S. 716, 62 S. Ct. 477, 86 L. Ed. 570 (1942)]; *Davis* v. *Department of Labor,* [317 U.S. 249, 63 S. Ct. 225, 87 L. Ed. 246 (1942), reh. denied, 317 U.S. 713, 63 S. Ct. 438, 87 L. Ed. 567 (1943)]; *Norton* v. *Warner Co.,* 321 U.S. 565, 568–569 [64 S. Ct. 747, 88 L. Ed. 931 (1944)].

"It matters not that the basic facts from which the Deputy Commissioner draws this inference are undisputed rather than controverted. See *Boehm* v. *Commissioner,* 326 U.S. 287, 293 [66 S. Ct. 120, 90 L. Ed. 78 (1945)]. It is likewise immaterial that the facts permit the drawing of diverse inferences. The Deputy Commissioner alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court. *Del Vecchio* v. *Bowers,* supra, 287. Moreover, the fact that the inference of the type here made by the Deputy Commissioner involves an application of a broad statutory term or phrase to a specific set of facts gives rise to no greater scope of judicial review. *Labor Board* v. *Hearst Publications,* 322 U.S. 111, 131 [64 S. Ct. 851, 88 L. Ed. 1170, reh. denied, 322 U.S. 769, 64 S. Ct. 1148, 88 L. Ed. 1595 (1944)]; *Commissioner* v. *Scottish American Co.,* 323 U.S. 119, 124 [65 S. Ct. 169, 89 L. Ed. 113 (1944)]; *Unemployment Compensation Commission* v. *Aragon,* 329 U.S. 143, 153–154 [67 S. Ct. 245, 91 L. Ed. 136 (1946)]. Even if such an inference be considered more

legal than factual in nature, the reviewing court's function is exhausted when it becomes evident that the Deputy Commissioner's choice has substantial roots in the evidence and is not forbidden by the law. Such is the result of the statutory provision permitting the suspension or setting aside of compensation orders only 'if not in accordance with law.' " *Cardillo* v. *Liberty Mutual Co.,* 330 U.S. 469, 477–78, 67 S. Ct. 801, 91 L. Ed. 1028 (1947).

To the extent that we have articulated a standard for reviewing a determination by a commissioner that an injury arose out of the employment, we have treated this issue as factual in nature and, therefore, have accorded the commissioner's conclusion the same deference as that given to similar conclusions of a trial judge or jury on the issue of proximate cause. "A finding of a fact of this character [whether the injury arose out of the employment] is the finding of a primary fact. . . . This ordinarily and in this case presents a question for the determination of the commissioner and we have no intention of usurping his function." *Herbst* v. *Hat Corporation of America,* 130 Conn. 1, 4, 31 A.2d 329 (1943). "This rule leads to the conclusion that unless the case lies clearly on the one side or the other the question whether an employee has so departed from his employment that his injury did not arise out of it is one of fact." Id., 7–8; see also *Woodley* v. *Rossi,* 152 Conn. 1, 6, 202 A.2d 136 (1964); *Gordon* v. *United Aircraft Corporation,* 150 Conn. 328, 329, 189 A.2d 384 (1963).

Applying these principles to this case we are persuaded that in reviewing the facts found by the commissioner, the review division is bound by the findings of fact made by the commissioner, unless additions, corrections or modifications of findings of fact are made pursuant to the narrow proviso set forth in § 31-301 (a). Contrary to *Adzima* v. *UAC/Norden Division,* supra, the review division in this case reassessed the facts.

We conclude that this is not permissible under General Statutes § 31-301 (a), § 31-301-8 of the Regulations of Connecticut State Agencies, and our case law. See *Adzima* v. *UAC/Norden Division,* supra; *Herbst* v. *Hat Corporation of America,* supra.

## II

The defendant concedes that "[i]n the instant case there is no issue that the injury occurred while the claimant was in the course of her employment so that the sole issue is whether the injury and death arose out of that employment." In support of the claim that the decedent's death did not arise out of her employment, the defendant relies principally on Larson's Workmen's Compensation Law, § 11.21, which provides in pertinent part: "When the animosity or dispute that culminates in an assault is imported into the employment from claimant's domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment . . . ." See also 82 Am. Jur. 2d § 329, pp. 126–27 ("when the assault is unconnected with the employment, or is for reasons personal to the assailant and the one assaulted, or is not because the relation of employer and employee exists, and the employment is not the cause, though it may be the occasion, of the wrongful act, and may give a convenient opportunity for its execution, it is ordinarily held that the injury does not arise out of the employment").

To illustrate the application of the rule taken from Larson, the defendant relies on several cases such as *Johnson* v. *Drummond, Woodsum, Plimpton & MacMahon, P.A.,* 490 A.2d 676 (Me. 1985),[3] *Epperson*

[3] In *Johnson* v. *Drummond, Woodsum, Plimpton & MacMahon, P.A.,* 490 A.2d 676 (Me.1985), the victim was shot in the reception area of the law firm where she worked. On several occasions prior to the date of the shooting the victim's husband had attempted to contact the victim in person or by telephone. She refused to see him or talk to him. She advised the receptionist at the law firm to tell him that she was unavailable. The office man-

v. *Industrial Commissioner,* 26 Ariz. App. 467, 549 P.2d 247 (1976),[4] and *Transactron, Inc.* v. *Workers' Compensation Appeals Board,* 68 Cal. App. 3d 233, 137 Cal. Reptr. 142 (1977).[5] Although these cases may be distinguished from this case, nonetheless there is a significant similarity and adherence to the general rule. As in this case, the animosity or dispute that culminated in the assault in these cases was unconnected with the victim's employment and was imported into the employment from the victim's domestic or private life.

We note that the Connecticut cases urged for our consideration pertaining to assaults at the work place are cases involving attacks by fellow employees or pertaining to conditions of employment. See *Willis* v. *Taylor & Fenn Co.,* 137 Conn. 626, 79 A.2d 821

ager counseled her in such a way that she felt obligated to take her husband's telephone calls and meet with him. The office manager testified that she had been told by the victim that her husband would not attack her. On the day of the shooting, the husband appeared at the office and demanded to see the victim. The victim met with him in the reception area. Following a short, calm conversation the husband pulled a gun from his clothing and shot the victim. Compensation was denied.

[4] In *Epperson* v. *Industrial Commissioner,* 26 Ariz. App. 467, 549 P.2d 247 (1976),the victim was shot by her husband at her place of employment. The security guard at her work place had knowledge of her marital problems and of her wish to have her husband kept away. The conversation between the couple just prior to the shooting was calm and there was no indication that the victim was in need of assistance. The court ruled that under these circumstances, the victim could not justifiably have expected or relied upon the employer for protection. The employer had no knowledge of the husband's violent nature nor did the wife sufficiently convey her fears to her employer. Compensation was denied.

[5] In *Transactron, Inc.* v. *Workers' Compensation Appeals Board,* 68 Cal. App. 3d 233, 137 Cal. Reptr. 142 (1977), because of fear of personal injury the decedent hid in the rest room of her work place from her jealous boyfriend. The boyfriend entered the building and was informed by an unsuspecting co-employee of the decedent's whereabouts, and the boyfriend proceeded to the rest room, found the deceased and shot her. The court denied an award, ruling that the connection between the assault and the decedent's employment was so remote that the injury could not be deemed to have arisen out of her employment.

(1951) (fellow employee); *Stulginski* v. *Waterbury Rolling Mills Co.,* 124 Conn. 355, 199 A. 653 (1938) (fellow employee); *Munro* v. *Williams,* 94 Conn. 377, 109 A. 129 (1920) (protection of employer's property); *Jacquemin* v. *Turner & Seymour Mfg. Co.,* 92 Conn. 382, 103 A. 115 (1918) (fellow employee); *Coppola* v. *New Haven,* 1 Conn. Workers' Comp. Rev. Op. 160, 162 (1982).

In opposing the application of the general rule, the plaintiff argues that under the facts in this case one of the contemplated exceptions to the general rule is appropriate. The exception urged by the plaintiff is also set forth in Larson's Workmen's Compensation Law, § 11.00, which provides in pertinent part: "Assaults for private reasons do not arise out of the employment unless, by facilitating an assault which would not otherwise be made, the employment becomes a contributing factor."

The plaintiff's argument relates to the stipulation and finding that the decedent was concerned about her safety and had made this known to her fellow employees, her supervisor and the local police. The plaintiff argues that the supervisor "facilitated" Fair's assault on the decedent within the meaning of the exception to the general rule provided in § 11.00 of Larson's Workmen's Compensation Law, because the supervisor informed Fair of the decedent's location in the bank when Fair returned to the bank and inquired of her whereabouts, after he had been asked to leave.

Although the plaintiff's argument is attractive, it is not persuasive. At most, the plaintiff's argument indicates Fair's intense desire to contact the victim. The record reveals no evidence of any connection between the victim's job and the animosity or dispute culminating in the assault. Furthermore, there is no evidence that the bank knew or had any reason to suspect that

Fair was armed. The fact that Fair had been escorted out of the bank earlier does not compel the suspicion that when he returned, he was armed and intended to harm the victim. It is equally plausible that when he returned to the bank, if he was neither threatening nor armed, he would have a better opportunity to contact the victim.

More important, however, is the fact that foreseeability is not the focus in a nonfault system of liability. 1 A. Larson, supra, § 11.11 (d). We can distinguish our prior holding in *Marchiatello* v. *Lynch Realty Co.*, 94 Conn. 260, 263, 108 A. 799 (1919), where we stated: "If an employer knows or ought to know that . . . one of his employees is likely to cause injury to a fellow-employee, and injury results in consequence . . . of the character or habits of the employee, the injury results from a risk arising out of the conditions in which the employment is carried on, and hence arises out of the employment." *Marchiatello* concerned an award where a watchman was accidentally shot by a fellow employee with a pistol that had been left on a desk in a room in the defendant's factory. See also *Stulginski* v. *Waterbury Rolling Mills Co.*, supra; *Mascika* v. *Connecticut Tool & Engineering Co.*, 109 Conn. 473, 147 A. 11 (1929); *Jacquemin* v. *Turner & Seymour Mfg. Co.*, supra. Granting compensation to the victim of an assault by a fellow employee is quite different from granting an award to the dependent of a victim assaulted by an assailant who is unconnected with the victim's employment and assaults the victim for reasons unconnected with the victim's employment. In *Stulginski* v. *Waterbury Rolling Mills Co.*, supra, 361–62, we stated: " '[T]he essential connecting link of direct causal connection between the personal injury and the employment must be established before the act becomes operative. The personal injury must be the result of the employment and flow from it as the inducing proximate cause.

The rational mind must be able to trace resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery.' *Madden's Case,* 222 Mass. 487, 495, 111 N.E. 379 [1916]; *Interstate Foundry Co.* v. *Ponder,* 16 Ohio App. 319, 321 (1922)].''

Because of the findings based upon the parties' stipulation, the commissioner determined that the decedent's death did not arise out of her employment. Review of the record indicates that the commissioner's determination was not based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. Therefore, it was improper for the review division to substitute its findings for the findings of the commissioner. General Statutes § 31-301 (a); Regs., Conn. State Agencies § 31-301-8; *Cardillo* v. *Liberty Mutual Co.,* supra; *Adzima* v. *UAC/Norden Division,* supra; *Herbst* v. *Hat Corporation of America,* supra.

There is error, the decision of the compensation review division reversing the denial of an award by the commissioner, and granting an award to the claimant is set aside, and the matter is remanded to the compensation review division with direction to dismiss the appeal.

In this opinion the other justices concurred.