Kevin TEMPLE, Appellant,

v.

DENALI PRINCESS LODGE, and Royal
Insurance Company, Appellees.

No. S–9448.

Supreme Court of Alaska.

April 27, 2001.

Charles W. Coe, Anchorage, for Appellant.

Robert L. Griffin, Law Offices of Robert L. Griffin, Anchorage, for Appellees.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

### OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Kevin Temple was unaware that his live-in girlfriend had not broken off her relationship with her prior boyfriend, Matt Callahan, until Callahan appeared at Temple's workplace and punched him in the jaw. Temple argues that he is entitled to workers' compensation for the injury because his employer, Denali Princess Lodge (Princess), facilitated the assault. This argument was rejected by the Alaska Workers' Compensation Board and by the superior court. Because we conclude that Princess's actions did not amount to facilitation, we affirm the Board's decision.

## II. FACTS AND PROCEEDINGS

### A. Factual History

Jessi Stroebele and Matt Callahan dated for about a year and a half. In May of 1994 Stroebele moved to the Denali Park area to work at the Denali Princess Lodge. Callahan visited her there in June and believed the relationship to be ongoing after he left. After the visit, however, Stroebele became romantically involved with Kevin Temple, another lodge employee. She told Temple that her relationship with Callahan had ended, and moved into shared lodge employee living quarters with Temple.

In August Callahan decided to pay Stroebele a surprise visit. Upon arrival at Denali Park, he learned that Stroebele was dating Temple and had moved in with him. Callahan went to Stroebele and Temple's living quarters, where he spoke briefly with Stroebele. Temple was not at home; he was working the breakfast shift at the lodge restaurant.

Callahan then went to the restaurant, where he planned to confront Temple. The restaurant was thinly staffed and had no manager on duty. The cashier and hostess stations at the front of the restaurant were apparently unattended, despite Princess's policy of having an employee greet custom-

ers. Although security guards were in the area, none was in the restaurant. Callahan either lingered for a while in the unattended front waiting area or walked directly to the employees-only staging area next to the kitchen. In the staging area, he waited for Temple for some time. He was not questioned about his presence or challenged by Princess personnel, despite a policy prohibiting non-employees in that part of the restaurant.

When Temple came into view, Callahan asked another staff member to confirm Temple's identity. The staff member did so without questioning Callahan's purpose in seeking Temple. It is disputed whether Callahan independently recognized Temple, or relied on the staff member's identification.[1]

In the staging area Temple approached Callahan, apparently thinking that he was a staff member or customer whom Temple was required to help as part of his job. Callahan spoke a few angry words to the bewildered Temple, then punched him in the jaw. According to Callahan, his frustration over Stroebele motivated the assault.

### B. *Procedural History*

Temple initially brought a claim for workers' compensation to the Board in March of 1997. The Board found that because Callahan had purely personal motives, injuries from the assault were not work related. It ruled that the employer's failure to enforce policies was irrelevant to compensability.

On appeal, Superior Court Judge Pro Tem Sigurd E. Murphy found that the Board had erred in not taking into account Princess's failure to enforce its own policies and rules, the fact that Temple was performing his job

in approaching his assailant, and the fact that a Princess employee pointed Temple out to Callahan. The proper test, the superior court held, was not whether the assailant's motivation was work related, but rather whether "the employer, by action or lack of action, engendered, exacerbated, or facilitated Callahan's attack." It remanded the case for the Board to apply the appropriate test.

On remand, the Board concluded that Princess did not facilitate the attack, and denied Temple compensation and attorney's fees. The superior court affirmed the Board's conclusion on appeal.

### III. *STANDARD OF REVIEW*

When considering decisions of administrative agencies, we apply the "substantial evidence" standard to questions of fact, asking whether findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] For questions of law involving agency expertise, we use the "reasonable basis" test.[3] We apply our independent judgment to questions of law that do not involve agency expertise, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

When the superior court acts as an intermediate court of appeal, we do not defer to its legal determinations.[5]

### IV. *DISCUSSION*

#### A. *Temple Is Not Eligible for Workers' Compensation for This Injury.*

##### 1. *Burden of proof*

The Alaska Workers' Compensation Act establishes a presumption that em-

---

1. In reaching its factual findings, the Board relied in part on testimony from Callahan's criminal change-of-plea hearing. *State of Alaska v. Matthew R. Callahan*, Case No. 4HE–94–32. Temple now claims that this evidence was inadmissible. Temple waived this objection by not raising it before the Board. *See* Alaska R. Evid. 103(a)(1); *Sherbahn v. Kerkove*, 987 P.2d 195, 199 (Alaska 1999) ("If a party fails to object to the admission of evidence, the party has waived the objection."). Moreover, because he only cursorily briefed this argument on appeal, we will not consider the claim. *See Adamson v. University of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991).

2. *Bockness v. Brown Jug, Inc.*, 980 P.2d 462, 465 (Alaska 1999) (quoting *Grove v. Alaska Constr. & Erectors*, 948 P.2d 454, 456 (Alaska 1997)).

3. *Williams v. State, Dep't of Revenue*, 938 P.2d 1065, 1069 (Alaska 1997).

4. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

5. *See Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

ployees' claims are compensable.[6] Applying this presumption involves a three-step analysis.[7] First, the employee must establish a preliminary link between the injury and the employment.[8] This step of the analysis requires consideration of "only evidence that tends to establish the link."[9] We agree with the Board that Temple established the presumption by presenting evidence that Callahan lingered in an employees-only area without being stopped or questioned, and that a Princess employee pointed Temple out to Callahan.

In the second step, we inquire whether the employer rebutted this presumption with "substantial evidence that either (1) provides an alternative explanation which, if accepted, would exclude work related factors as a substantial cause of the [injury]; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability."[10] The Board found that the presumption was rebutted by Callahan's testimony that he walked past the front area without waiting to be assisted and that he recognized Temple unaided. We also agree with this conclusion.

As a third step, once the employer has rebutted the presumption that the injuries are work related, the employee can prevail only if he proves his claim by a preponderance of the evidence.[11] We hold that the Board permissibly found that Temple had not proved his claim by a preponderance of

the evidence and therefore agree that he is not eligible for workers' compensation.

#### 2. *Personally motivated assaults in the workplace*

The Alaska Workers' Compensation Act defines compensable injuries as those "arising out of and in the course of employment ... includ[ing] an injury caused by the wilful act of a third person directed against an employee because of the employment."[12] Generally, courts have found that injuries do not arise from employment where private quarrels are "imported" from outside of the employment.[13] *Larson's Workers' Compensation Law* treatise discusses fights over spouses or lovers as classic examples of imported quarrels.[14] Injuries arising from assaults or fights in such cases are almost always non-compensable.[15] Courts are especially likely to deny compensation when the sole role of employment in the assault is "provid[ing] a place where the assailant can find the victim."[16]

We have strongly intimated in the past that an assault motivated by a love triangle would not arise out of employment for purposes of workers' compensation. In *Fireman's Fund American Insurance Cos. v. Gomes,* we discussed what kind of evidence might rebut the statutory presumption of compensability for workplace injuries.[17] We noted that if the employer in that case had presented evidence that its employee's shooting was caused by his involvement in a love

---

**6.** *See* AS 23.30.120(a)(1); *Tolbert v. Alascom, Inc.,* 973 P.2d 603, 606 (Alaska 1999).

**7.** *See Osborne Constr. Co. v. Jordan,* 904 P.2d 386, 389 (Alaska 1995).

**8.** *See id.*

**9.** *Tolbert,* 973 P.2d at 610.

**10.** *Big K Grocery v. Gibson,* 836 P.2d 941, 942 (Alaska 1992) (quoting *Grainger v. Alaska Workers' Compensation Bd.,* 805 P.2d 976, 977 (Alaska 1991)).

**11.** *See Veco, Inc. v. Wolfer,* 693 P.2d 865, 870 (Alaska 1985).

**12.** AS 23.30.395(17).

**13.** *See* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 8.02[1][a] (1999) [hereinafter *Larson's*].

**14.** *Id.* § 8.02[1][b], at 8–43.

**15.** *See, e.g., Devlin v. Ennis,* 77 Idaho 342, 292 P.2d 469 (1956); *Ellis v. Rose Oil Co.,* 190 So.2d 450 (Miss.1966); *Gutierrez v. Artesia Pub. Schs.,* 92 N.M. 112, 583 P.2d 476 (N.M.App.1978); *In re Robinson,* 23 Or.App. 126, 541 P.2d 506 (1975).

**16.** *California State Polytechnic Univ. v. Workers' Compensation Appeals Bd.,* 127 Cal.App.3d 514, 179 Cal.Rptr. 605, 607 (1982); *see also Rogers v. Workers' Compensation Appeals Bd.,* 172 Cal. App.3d 1195, 218 Cal.Rptr. 662, 665–66 (1985); 1 *Larson's* § 8.02[1], at 8–42.

**17.** 544 P.2d 1013, 1016 (Alaska 1976).

triangle, it would have been "affirmative evidence indicating that the killing was not work-connected."[18]

We have also considered a case in which a love triangle apparently arose in the workplace, *Marsh v. Alaska Workmen's Compensation Board*.[19] Marsh, a bartender, joined a customer at her table during his break from work. He was kissing the customer when her husband, who had been in the next room, returned to the table, struck Marsh, and caused Marsh substantial injury.[20] We affirmed the Board's denial of workers' compensation benefits to Marsh, holding that he had "taken himself outside the scope and duties of his employment in his encounter with [the customer] and, that it was that conduct which motivated the assault on him."[21]

Assessing Marsh's claim, we quoted with favor Professor Larson's summary of the law:

When it is clear that the origin of the assault was purely private and personal, and that the employment contributed nothing to the episode, whether by engendering or exacerbating the quarrel or facilitating the assault, the assault should be held noncompensable.[22]

We emphasized that

labeling the employee's activity as "personal" may not render the ensuing injury per se noncompensable. However, the activity must still be "reasonably foreseeable and incidental" to the employment, and not just "but for" the employment, as appellant contends, to entitle the employee to claim compensation.[23]

In the current case, it is undisputed that Kevin Temple was assaulted when working. Unlike Marsh, he had not "taken himself outside the scope and duties of his employment"; his activity in approaching Callahan in the waiters' area was entirely "foreseeable and incidental" to the employment.[24] Under *Marsh*, therefore, his injuries may be compensable if Princess contributed to the episode by engendering, exacerbating, or facilitating the assault.[25]

According to Temple, Princess facilitated the assault by failing to have managers on duty, security in the area, or sufficiently trained or numerous servers, any of whom might have stopped Callahan before he reached Temple. The lack of managers and trained servers, Temple claims, violated Princess's policy; the policy offered Temple's only protection against assault. Princess further facilitated the assault, Temple argues, by requiring that he approach and assist customers, such as Callahan appeared to be. Finally, Temple claims that his employment contributed to the assault because a coworker pointed Temple out to his assailant.

The Board considered these claims and concluded that Princess's actions did not constitute facilitation. A review of case law convinces us that the Board correctly reached this conclusion. Although courts have, in rare cases, awarded compensation for injuries arising from personally motivated assaults in the workplace, these unusual cases involved facts dissimilar to the facts now before us. In one group of cases, compensation was awarded because an employee's performance of an employment obligation made the assault possible. These cases are not analogous to Temple's because, as the Board found and substantial evidence supports, "the assault occurred on Employer's premises not because Employee was performing his duties at the time of the assault,

---

18. *Id.*

19. 584 P.2d 1134 (Alaska 1978). Although *Marsh* considered an earlier version of the workers' compensation statute, former AS 23.30.265(13), that statute defined compensable injuries caused by a third person in language identical to that in the current AS 23.30.395(17).

20. *Marsh*, 584 P.2d at 1135.

21. *Id.* at 1137.

22. *Id.* at 1136 (quoting 1 A. Larson, *The Law of Workman's Compensation* § 11.21, at 3–207 (1978)). The treatise has since been updated, but still includes this exact passage. 1 *Larson's* § 8.02[1][c], at 8–44.

23. *Marsh*, 584 P.2d at 1136.

24. *Id.*

25. *See id.*

but because he merely was there." In a second set of cases, compensation was awarded because an employer's action or inaction gave the assailant access to the victim. The Board found substantial evidence to reject compensation under this precedent as well; we affirm its conclusion that "Employer's action or inaction did not facilitate the assault upon Employee," and that his injuries therefore "do not arise out of his employment."

### a. *Attacks which arise from an employee's performance of employment obligations*

Temple argues that his performance of a workplace obligation, approaching and assisting customers, was a causal factor in the assault. He testified that company policy and common sense required that he assist customers in the employees-only staging area, and he believed Callahan was a customer.

### i. *Temple's performance of employment obligations did not give Callahan a unique opportunity to attack.*

A small number of cases have held injuries compensable where the obligations of the victim's employment created a unique opportunity for the assailant to attack. In *Culpepper v. Fairfield Sapphire Valley*, the claimant worked as a cocktail waitress in an isolated mountain resort.[26] The employer expected employees to help customers anywhere in the resort. Therefore, the claimant stopped on the road to assist a stranded motorist whom she recognized as a customer. He kidnapped and sexually assaulted her, and she sustained serious injuries in escaping from his moving car. The court found the injuries causally connected to her employment because the job placed her at increased risk of sexual assault and because she acted in the interests of her employer when she stopped on the roadside.[27]

The California Supreme Court in *California Compensation & Fire Co. v. Workmen's Compensation Appeals Board* also awarded compensation to an employee whose work requirements put her at special risk.[28] The claimant's employment required that she visit customers' homes to measure tables for customized pads. Her ex-husband rented an apartment and placed an order with her employer under an assumed name. When she came to the apartment, he shot and killed her.[29] The court found that the employee's work obligations contributed to her death because of the role her work duties played in her assailant's scheme.[30]

These cases are analogous to Temple's in that the attacker had personal motivation and the employees' work obligations created the opportunity for assault. However, in both cases the employees' work-related actions were clear causal factors that allowed the assaults to occur. The same is not true in this case. Callahan had already found his victim when Temple approached him. Callahan did not attack Temple at work because Temple was performing his workplace obligations, but rather because the restaurant "provide[d] a place where the assailant [could] find the victim." [31] Under these circumstances, as the Board correctly concluded, compensation is not appropriate.

### ii. *Temple's performance of employment obligations did not motivate Callahan's attack.*

In rare cases, courts have awarded compensation where employees' performance of work duties motivated assailants to attack them. In *Ross v. Workmen's Compensation Appeals Board*, a liquor store clerk was awarded compensation after a customer's jealous husband shot him.[32] The husband's suspicions were aroused because the clerk

---

26. 93 N.C.App. 242, 377 S.E.2d 777 (N.C.App.), *aff'd*, 325 N.C. 702, 386 S.E.2d 174 (N.C.1989).

27. *See id.* at 784.

28. 68 Cal.2d 157, 65 Cal.Rptr. 155, 436 P.2d 67 (1968).

29. *See id.* at 68.

30. *See id.* at 69.

31. *California State Polytechnic Univ. v. Workers' Compensation Bd.*, 127 Cal.App.3d 514, 179 Cal. Rptr. 605 (Cal.App.1982).

32. 21 Cal.App.3d 949, 99 Cal.Rptr. 79 (1971).

had been seen sitting in his wife's car outside the store. Because the clerk's job involved helping customers carry purchases to their cars and acting friendly toward them, the *Ross* court found that "claimant's work activity and ambient circumstances of his employment" were a causal factor in the assault.[33] We discussed *Ross* in our *Marsh* decision, and distinguished it because Ross did not act "in a personal capacity" in being friendly with his assailant's wife.[34]

In another case, *Murphy v. Workers' Compensation Appeals Board,* a husband shot his wife at her workplace because of a dispute over the job itself.[35] The court found that this assault was work related because the underlying dispute between the victim and her husband directly concerned her work.[36]

Kevin Temple's situation is not analogous to either of these cases; Temple's performance of work duties did not anger Callahan or motivate the assault. At most, Temple's accessibility at work provided Callahan with the inspiration and the opportunity to attack. This attenuated connection does not support a finding that Princess facilitated the assault or that workers' compensation is owed.

### iii. *Temple's performance of employment obligations did not create a unique risk of attack.*

Finally, the inherent risk of certain jobs may support a finding that injuries sustained in personal attacks are work related. Both *Culpepper*[37] (in which the claimant worked as a cocktail waitress in a remote location) and *California Compensation*[38] (in which the claimant visited customers' homes to perform

her job) considered such risk when awarding compensation to the claimants. In *Bryan v. Best Western/Coachman's Inn,* the court held that a motel security guard's injuries, sustained in a fight with a coworker's boyfriend, were work related because employment as a guard increased risk of assault.[39] These cases do not support Temple's claim, because, as the Board noted, waiting tables is not inherently dangerous work.

### b. *Attacks in which the employer's action or inaction gave the assailant access to the victim*

Temple argues that Princess facilitated his attack because a coworker helped Callahan identify his victim and because Princess failed to enforce policies which would have kept Callahan away from him. We affirm the Board's conclusion that case law on these issues does not support Temple's claim.

### i. *Princess did not facilitate the attack through an employee's act in identifying Temple for Callahan.*

Temple argues that Princess facilitated the attack because a restaurant employee helped Callahan identify his victim. Yet in several cases in which coworkers were more clearly instrumental in bringing an attacker to his victim, courts found that the resulting injuries did not arise from work. In *Transactron, Inc. v. Workers' Compensation Appeals Board,* an employee hid in the women's restroom from her angry husband.[40] A coworker told the husband where to find her; he entered the restroom and shot her. The court held that compensation could not

---

33. *Id.* at 83; *see also Brewster Motor Co. v. Industrial Comm'n,* 36 Ill.2d 443, 223 N.E.2d 131 (1967) (awarding compensation to auto salesman who repeatedly met both husband and wife during home visits required by his work and who was eventually assaulted by irrationally jealous husband); *Nasser v. Security Ins. Co.,* 724 S.W.2d 17 (Tex.1987) (awarding compensation to restaurant manager whose work required friendly interaction with customers and who was assaulted by the irrationally jealous ex-boyfriend of a customer at whose table he sometimes sat).

34. *Marsh v. Alaska Workmen's Compensation Bd.,* 584 P.2d 1134, 1137 (Alaska 1978).

35. 86 Cal.App.3d 996, 150 Cal.Rptr. 561 (1978).

36. *Id.* at 564. *Murphy* also rested in part on the actions taken by the employer, as will be discussed in Part IV.A.2.b.ii, below. *Id.*

37. *Culpepper v. Fairfield Sapphire Valley,* 93 N.C.App. 242, 377 S.E.2d 777 (1989), *aff'd,* 325 N.C. 702, 386 S.E.2d 174 (1989).

38. *California Compensation & Fire Co. v. Workmen's Compensation Appeals Bd.,* 68 Cal.2d 157, 65 Cal.Rptr. 155, 436 P.2d 67 (1968).

39. 47 Ark.App. 75, 885 S.W.2d 28 (1994).

40. 68 Cal.App.3d 233, 137 Cal.Rptr. 142 (1977).

be predicated upon a coworker giving directions to an assailant.[41] Similarly, in *Fair v. People's Savings Bank*, a court found that an employer did not facilitate a lethal assault where a supervisor, who knew that the employee feared her boyfriend but did not know that he was armed, told the boyfriend the employee's location.[42] In light of this precedent, the Board properly concluded that a Princess staff member's action in helping Callahan identify Temple did not amount to facilitation by Princess of Callahan's attack.

### ii. *Princess did not facilitate the attack by letting Callahan into the restaurant.*

■ In extreme cases, employers may facilitate assault by failing to protect an employee from danger. Princess's failure to protect Temple, however, is not factually comparable to the acts of the employers in cases in which compensation was awarded. In *Murphy v. Workers' Compensation Appeals Board*, the employee's husband and attacker had told the employee's supervisor the precise time and location where he intended to kill his wife. The supervisor did not warn the employee, nor did he grant her repeated requests for a leave of absence.[43] The court found that her assault and death were work related.[44] In *Carter v. Penney Tire & Recapping Co.*, a roofer warned his employer that he expected to be attacked.[45] The employer told him to return to work, and guaranteed his safety. The South Carolina Supreme Court held that gunshot wounds subsequently sustained by the employee on the worksite arose from his em-

ployment and were compensable.[46] These cases are distinguishable from Temple's because they involved foreknowledge as well as significant misconduct or assumption of responsibility by management.

Several cases have rejected claims based on employers' failure to protect employees from assault. In *Epperson v. Industrial Commission*, the employee had asked the security guard at work not to admit her husband to the building.[47] The husband came to the workplace in search of her, and she met with him within view of the security guard. Following a calm conversation, he shot her. Epperson argued that the assault was exacerbated by employment because she had depended on the security guard. But the court rejected this argument because Epperson did not warn the guard that her husband might be armed or violent, and she did not indicate any distress or need for assistance during their encounter.[48] *Johnson v. Drummond, Woodsum, Plimpton & MacMahon, P.A.* drew on *Epperson* in denying compensation to an employee who told the receptionist not to let her husband into the building, but told her manager that he would not harm her, and spoke calmly with her husband in the lobby before he shot her.[49] Courts also rejected claims that personally motivated assaults were facilitated by an employer who let the assailant into the workplace in *Transactron*[50] and *Fair*,[51] two cases discussed above, involving coworkers who directed assailants to their victims.

Given that employers' failure to protect employees from assault did not constitute

---

41. *See id.* at 145.

42. 207 Conn. 535, 542 A.2d 1118, 1123 (1988).

43. 86 Cal.App.3d 996, 150 Cal.Rptr. 561, 564 (1978).

44. *Id. Murphy* also rested in part on the fact that the attack was motivated by a dispute over work, as was discussed in Part IV.A.2.a.iii, above. *Id.* at 564.

45. 261 S.C. 341, 200 S.E.2d 64 (1973).

46. *See id.* at 67–68.

47. 26 Ariz.App. 467, 549 P.2d 247 (Ariz.App. 1976).

48. *See id.* at 250.

49. 490 A.2d 676, 678–79 (Maine 1985).

50. *Transactron, Inc. v. Workers' Compensation Appeals Bd.*, 68 Cal.App.3d 233, 137 Cal.Rptr. 142 (1977) (denying compensation where coworker told assailant that employee was hiding in the restroom, but that he was not permitted to enter, and assailant went into the restroom and shot employee).

51. *Fair v. People's Savings Bank*, 207 Conn. 535, 542 A.2d 1118 (1988) (denying compensation where coworker told assailant that victim was in personnel office, and he went into the office and shot employee).

facilitation under the facts of the cases discussed above, the Board correctly concluded that Princess's inaction in this case also does not constitute facilitation.

### iii. *Princess did not facilitate the attack by failing to uphold the policies upon which Temple relied.*

■ Temple's argument that Princess facilitated the attack by failing to protect him focuses on the restaurant's policies of greeting new guests promptly in the front area, having managers on duty, and prohibiting non-employees from visiting the waiters' staging area. These policies should have shielded Temple from harm, he argues, but Princess did not uphold these policies on the morning of the attack.

Very few cases address the role of workplace security policies in workers' compensation cases. A review of these few cases, along with consideration of the purpose of workers' compensation statutes and general policy concerns, convinces us that Princess's failure to enforce these policies did not facilitate Callahan's attack on Temple. We therefore affirm the Board's conclusion on this issue, as well.

Employers' failure to enforce a policy has generally not provided a basis for compensating resulting injuries in the workplace. Although Professor Larson discusses liability arising from employers' failure to adhere to statutory or regulatory safety requirements, he does not treat internal employer policy as a source for special employer obligations.[52] One case which indirectly considered the question, *Devault v. General Motors Corp.,* did not find that the employer's inadequate

enforcement of security policy facilitated a personally motivated attack.[53] In *Devault,* the employee was assaulted at work by an off-duty coworker who was admitted to the workplace despite the fact that he had the wrong badge for the shift and only on-duty workers were supposed to be allowed inside. The court found that the injury was not work related, in part because of evidence that the employer had a flexible enforcement policy concerning admissions.[54] The dissent argued that the employer did facilitate the assault because it was negligent in admitting the assailant despite his lack of a badge for that shift.[55]

In several other cases involving workplace assault, courts stated or implied that injuries were not compensable, in part because the employers did all that could reasonably be expected of them under the circumstances.[56] In *Transactron,* the court emphasized, without drawing a legal conclusion, that the employers' actions conformed with existing security measures.[57] None of these cases directly supports the proposition that failure to uphold security policies might be grounds for finding employer facilitation, and we decline to reach such a conclusion on the facts of this case.

■ Temple's argument also confuses the logic of workers' compensation with that of tort law. As we have explained in the past, the workers' compensation system is based on a "political compromise ... whereby the employer bears the initial cost of injuries that arise from employment related risks, regardless of 'fault,' and the employee surrenders his common-law right to sue in

---

**52.** 7 *Larson's* § 69.24, at 13–353–13–371.

**53.** 149 Mich.App. 765, 386 N.W.2d 671, 673–74 (Mich.App.1986).

**54.** *See id.*

**55.** *See id.* at 677 (Burns, J., dissenting).

**56.** *See, e.g., Epperson v. Industrial Comm'n,* 26 Ariz.App. 467, 549 P.2d 247 (Ariz.App.1976); *Johnson v. Drummond, Woodsum, Plimpton & MacMahon, P.A.,* 490 A.2d 676 (Maine 1985) (denying compensation where employee told receptionist not to admit her husband but told manager that he was not a threat; he shot em-

ployee in the lobby of her workplace); *Fair v. People's Savings Bank,* 207 Conn. 535, 542 A.2d 1118 (1988) (denying compensation where coworker told assailant that victim was in personnel office, and he went into the office and shot employee).

**57.** *Transactron, Inc. v. Workers' Compensation Appeals Bd.,* 68 Cal.App.3d 233, 137 Cal.Rptr. 142 (1977) (denying compensation where coworker told assailant that employee was hiding in the restroom, but that he was not permitted to enter, and assailant went into the restroom and shot employee).

tort."[58]  The "underlying premise of this system is that liability is based upon the existence of an employment relationship, not upon a determination of culpability."[59]  Temple's argument would make negligence and fault the basis for workers' compensation. This is inconsistent with the underlying logic of workers' compensation and with the rule of AS 23.30.045(b), that "compensation is payable irrespective of fault as a cause for the injury."

### B. *The Board Did Not Base Its Analysis on the Positional Risk Test.*

Temple argues that the Board misapplied the law in his case by drawing on the positional risk doctrine.[60]  Although the Board's opinion does, at one point, describe Temple's claim as a positional risk argument, and briefly analyze the case under that doctrine, the bulk of the Board's analysis and its legal conclusion focus on employer facilitation of assault.  The Board applied the appropriate legal test.[61]

### V.  CONCLUSION

We conclude that substantial evidence supports the Workers' Compensation Board's conclusion that Princess did not facilitate this assault.  Therefore, we AFFIRM the Board's decision in this case.

---

58.  *Fox v. Alascom, Inc.,* 718 P.2d 977, 980 (Alaska 1986).

59.  *M-K Rivers v. Schleifman,* 599 P.2d 132, 135 (Alaska 1979).

60.  The positional risk doctrine provides compensation for situations in which an injury "would not have occurred *but for* the fact that the conditions and obligations of the employment placed the claimant in the position where he was injured."  According to Professor Larson, the doctrine applies only to neutral forces, such as "stray bullets [or] roving lunatics," which are "neither personal to the claimant nor directly associated with the employment."  1 *Larson's* § 3.06, at 3–6.

61.  Temple also challenges the Board's failure to award him attorney's fees.  AS 23.30.145(b) authorizes reasonable attorney's fees for injured employees who successfully prosecute workers' compensation claims against their employers. Because we affirm the Board's denial of Temple's workers' compensation claim, Temple is not entitled to attorney's fees.