# ROBERT ESPOSITO *v.* CITY OF STAMFORD ET AL.
## (SC 20928)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

### *Syllabus*

The plaintiff, the decedent's surviving spouse, appealed from the decision of the Compensation Review Board. The board had upheld the administrative law judge's denial of an award of statutory (§ 31-308 (b)) permanent partial disability benefits in connection with injuries that the decedent had sustained while working for the Stamford Police Department. The plaintiff claimed, inter alia, that the board had incorrectly concluded that the decedent's entitlement to permanent partial disability benefits did not vest before his death because, prior to his death, the decedent had reached maximum medical improvement as a matter of law, insofar as the decedent previously had been found to have a permanent incapacity qualifying him for statutory (§ 31-307 (c)) total incapacity benefits. *Held*:

A finding of a permanent injury under § 31-307 (c) does not entitle a workers' compensation claimant to permanency benefits under § 31-308 (b) as a matter of law, in the absence of a permanent partial disability rating or an agreement sufficient for a binding meeting of the minds that would furnish a basis for the requisite finding of maximum medical improvement.

The decedent's entitlement to permanency benefits under § 31-308 (b) did not vest before his death because the record did not establish that he had reached maximum medical improvement during his lifetime, even though he had been found to have a permanent injury under § 31-307 (c).

(*Three justices dissenting in one opinion*)

Argued April 22—officially released August 2, 2024*

---

* August 2, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Esposito *v.* Stamford

*Procedural History*

Appeal from the decision of the administrative law judge for the Seventh District of the Workers' Compensation Commission, where Roseann Esposito was added as a plaintiff, denying the claim for permanent partial disability benefits, brought to the Compensation Review Board, which affirmed the decision of the administrative law judge, and the plaintiff Roseann Esposito appealed. *Affirmed.*

*Steven G. Howe*, for the appellant (plaintiff Roseann Esposito).

*Scott W. Williams*, for the appellees (defendants).

*Opinion*

ROBINSON, C. J. In this appeal, we consider whether a finding of a "permanent" injury entitling a workers' compensation claimant to total incapacity benefits under General Statutes § 31-307 (c) means that the claimant has reached maximum medical improvement as a matter of law, thus also entitling the claimant to permanent partial disability benefits (permanency benefits) under General Statutes § 31-308 (b). The plaintiff Roseann Esposito, who is the surviving spouse of the decedent and original plaintiff, Robert Esposito,[1] appeals[2] from the decision of the Compensation Review Board (board) affirming the decision of the administrative law judge for the Seventh District of the Workers'

_____

[1] The decedent was the original plaintiff in this matter before the Workers' Compensation Commission. After his death, Roseann Esposito, his surviving spouse, was added as a plaintiff. For the sake of simplicity, we refer to Roseann Esposito as the plaintiff and Robert Esposito as the decedent.

[2] The plaintiff appealed from the decision of the Compensation Review Board to the Appellate Court; see General Statutes § 31-301b; and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Esposito *v.* Stamford

Compensation Commission (commission),[3] who denied an award of permanency benefits. The board based its affirmance on its determination that the decedent had not reached maximum medical improvement during his lifetime. On appeal, the plaintiff claims, among other things, that the decedent, who had been employed as a police officer for the named defendant, the city of Stamford (city),[4] had reached maximum medical improvement prior to his death as a matter of law, insofar as he had been found to have a permanent incapacity qualifying him for benefits under § 31-307 (c). Guided by this court's recent decision in *Brennan* v. *Waterbury*, 331 Conn. 672, 697, 207 A.3d 1 (2019), we disagree with the plaintiff and, accordingly, affirm the decision of the board.

The record reveals the following relevant facts and procedural history. The decedent began working for the city's police department in 1976, at which time his physical examination indicated that his vision was 20/20 in both eyes. In 1982, in the course of his employment, the decedent fell and struck the back of his head on a concrete floor, losing consciousness. When he awoke, he experienced blurred vision in both eyes. James E. Pulkin, an ophthalmologist at Yale University, treated the decedent immediately for "a profound visual loss in both eyes," finding that "the best level of corrected

[3] As a result of General Statutes § 31-275d (a) (1), the administrative adjudicators for the commission became known as "administrative law judges," rather than their former title of "workers' compensation commissioners." Because this appeal includes decisions rendered both before and after October 1, 2021, which was the effective date of § 31-275d (a) (1), consistent with recent workers' compensation appeals, we refer to the commission's administrative adjudicators by their title at the time of the applicable decision. See, e.g., *Ajdini* v. *Frank Lill & Son, Inc.*, 349 Conn. 1, 3 n.1, 4–5, 312 A.3d 579 (2024); *Clark* v. *Waterford, Cohanzie Fire Dept.*, 346 Conn. 711, 716 n.4, 295 A.3d 889 (2023).

[4] PMA Management Corporation of New England, the third-party administrator for the city, also is a defendant.

Esposito *v.* Stamford

vision in the right eye was 20/400 and finger counting at four inches in the left eye.'' (Internal quotation marks omitted.)

The decedent filed a claim for benefits with the commission. In 1984, at an informal hearing before the commission, the defendants agreed to provide total incapacity benefits to the decedent pursuant to General Statutes (Rev. to 1983) § 31-307 and, thereafter, began paying benefits of $531.03 per week. Subsequently, in 1985, the commissioner awarded the decedent total incapacity benefits pursuant to General Statutes (Rev. to 1985) § 31-307 ''due to total and permanent loss of sight in both eyes.'' (Internal quotation marks omitted.) The decedent moved to Ohio in 1985 and began treatment with Bruce R. Jacobson, an ophthalmologist. Jacobson diagnosed the decedent with ''a macular hole (cystic lesion) of the left eye with a visual acuity of 20/ 200 (uncorrected) and a visual acuity of the right eye of 20/200 (uncorrected).'' One decade later, in 1995, Roland D. Carlson, an ophthalmologist, examined the decedent and reviewed medical reports provided by Jacobson, Abbas Sadeghian, a clinical psychologist, and Cyril Waynik, a psychiatrist. Carlson found that the decedent had ''a macular hole in his left eye and vision of 20/200,'' which is equivalent to ''one tenth or less of normal uncorrected vision.'' The decedent was then given a ''bioptic telescope,'' which corrected his vision in his right eye to an acuity level of 20/40. Carlson, however, additionally found that the decedent suffered from a ''hysterical component'' that contributed to his inability to see, which is a condition known as ''psychogenic blindness.'' Jacobson ''agree[d] that [the decedent's] vision may [have been] complicated by the contribution of this psychogenic overlay'' but opined that his ultimate ''visual disability [was] equal to [one] having a purely organic cause.''

350 Conn. 209 OCTOBER, 2024 213

Esposito *v.* Stamford

The defendants filed a form 36[5] in April, 1998, contesting the decedent's continued entitlement to total incapacity benefits pursuant to § 31-307 (c). In June, 1998, the commissioner denied the defendants' form 36 and ordered the defendants to continue to pay benefits pursuant to § 31-307 (c) (1998 finding). In the 1998 finding, the commissioner found that the decedent had been receiving total incapacity benefits since 1984 due to his "total and permanent loss of sight or the reduction to one tenth or less of normal vision in both eyes," satisfying the § 31-307 (c) standard. The defendants did not challenge the 1998 finding or that order. The defendants continued to make total incapacity benefit payments pursuant to § 31-307 (c), with the applicable cost of living adjustments pursuant to General Statutes § 31-307a, from April, 1982, until the decedent's death in November, 2020.

In July, 2021, the plaintiff was added as a party at formal proceedings before the commission; she claimed that she was the decedent's surviving spouse and sole presumptive dependent, and sought permanency benefits pursuant to § 31-308 (b). The plaintiff argued that, as the surviving spouse, she was entitled to permanency benefits pursuant to § 31-308 (b) following the decedent's death, even though those benefits had never been paid to the decedent and he had never requested them during his lifetime. The plaintiff argued that she was a presumptive dependent, as defined by General Statutes § 31-275 (19), and that the decedent's bilateral eye condition had become permanent no later than the date of

---

[5] "A [f]orm 36 is a [statutorily required] notice to the [workers'] compensation commissioner and the [claimant] of the intention of the employer and its insurer to discontinue [or reduce] compensation payments. The filing of this notice and its approval by the commissioner are required by statute in order properly to discontinue [or reduce] payments." (Internal quotation marks omitted.) *Gardner* v. *Dept. of Mental Health & Addiction Services*, 223 Conn. App. 221, 223 n.2, 308 A.3d 550, cert. granted, 348 Conn. 954, 309 A.3d 304 (2024).

Esposito *v.* Stamford

the 1998 finding, and as early as 1984. Additionally, the plaintiff claimed that the decedent's right to permanency benefits pursuant to § 31-308 (b) vested once his condition became permanent, thus entitling the plaintiff, as his surviving spouse, to those vested permanency benefits.

Considering these claims, the administrative law judge concluded that the decedent's entitlement to permanency benefits under § 31-308 (b) had vested no later than the date of the 1998 finding and that the decedent had reached maximum medical improvement by June, 1998, entitling him to a permanency award of 235 weeks of benefits for each eye. However, the administrative law judge also concluded that the defendants were entitled to a credit against any permanency award "for all indemnity benefits paid after the date of maximum medical improvement" because the amount of total incapacity benefits paid by the defendants was greater than the amount of permanency benefits owed to the decedent. Therefore, the administrative law judge denied and dismissed the plaintiff's claim for permanency benefits.[6]

The plaintiff appealed from the decision of the administrative law judge to the board. On appeal, the plaintiff claimed that the administrative law judge "erroneously applied the law" in concluding that the defendants were entitled to a credit against the unpaid permanency benefits. The board did not decide this claim, instead affirming

___

[6] In objecting to the plaintiff's claim for permanency benefits, the defendants also contended that the date of injury rule governed the plaintiff's dependency rights and that the plaintiff's and decedent's divorce in 1992 broke the legal chain of marriage, thus terminating any right the plaintiff might have had, even though they had remarried each other in 2010 and remained married until the decedent's death in 2020. The administrative law judge did not decide the issue of whether the divorce affected the plaintiff's status as the presumptive dependent of the decedent because it was "not material to the outcome of this case, as there [were] no permanency benefits still owing."

Esposito *v.* Stamford

the administrative law judge's decision on alternative grounds. Specifically, quoting from this court's decision in *Brennan* v. *Waterbury*, supra, 331 Conn. 697, the board concluded that, despite the decedent's "inchoate entitlement to 235 weeks of permanency benefits for each eye," the decedent nevertheless was not entitled to permanency benefits because the record lacked proof of a "concomitant assignment or award of a permanent partial disability rating, or 'an agreement between the parties sufficient to establish a binding meeting of the minds.' " Observing that the 1998 finding lacked any reference to a written or oral agreement for the payment of permanency benefits, the board concluded that the finding of statutory total incapacity did not create "an automatic entitlement to [permanency benefits] by operation of law." The board further concluded that, even if the 1998 finding were construed as a finding of maximum medical improvement, the commencement date of the credit could not be the date that the finding was issued in June, 1998, because that calculation would depend on "the specific circumstances of the claim along with consideration of the prohibition against double recovery." Accordingly, the board affirmed the administrative law judge's decision dismissing and denying the plaintiff's claim for permanency benefits. This appeal followed.

On appeal, the plaintiff claims that the board incorrectly concluded that the decedent's entitlement to permanency benefits did not vest before his death because he had reached maximum medical improvement as of the date of the 1998 finding, entitling him to permanency benefits as a matter of law.[7] The plaintiff contends that

_____

[7] Addressing the other matters raised before the board and the administrative law judge, the plaintiff also claims that (1) the defendants are not entitled to a credit against the permanency benefits for the total incapacity benefits they paid because §§ 31-307 (c) and 31-308 (b) each compensate the claimant for distinct losses, meaning that the payment of both types of benefits was not an impermissible double recovery, and (2) she is a presumptive dependent entitled to the vested permanency benefits because, despite

Esposito *v.* Stamford

the board incorrectly relied on the decedent's failure to request a permanency award during his lifetime and on the absence of an order for the payment of permanency benefits. Additionally, the plaintiff argues that a decedent need only have a permanent incapacity under § 31-307 (c) to satisfy § 31-308 (b), and that the fact that the decedent's disability spanned many years was enough to render his condition permanent. The defendants contend in response that the decedent's entitlement to permanency benefits did not vest before his death because the record lacks evidence of the decedent's maximum medical improvement. The defendants argue that the 1998 finding did not satisfy the § 31-308 (b) standard because there was no medical report addressing maximum medical improvement and because the parties had never discussed a permanent partial disability rating during the decedent's lifetime. We agree with the defendants and conclude that the decedent's entitlement to permanency benefits under § 31-308 (b) did not vest before his death because the record does not establish that he had reached maximum medical improvement, even though he had been found to have a permanent injury under § 31-307 (c).

"The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation

their earlier divorce, she was married to the decedent at the time of his injury and had remarried him prior to his death. See footnote 6 of this opinion. Given our conclusion that the decedent was not entitled to permanency benefits under § 31-308 (b), we need not address these additional claims.

Esposito *v.* Stamford

statutes by the commissioner and [the] board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . .'' (Internal quotation marks omitted.) *Coughlin* v. *Stamford Fire Dept.*, 334 Conn. 857, 862–63, 224 A.3d 1161 (2020).

"In addition, we are mindful of the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees.'' (Internal quotation marks omitted.) Id., 863. "It is axiomatic that we follow the plain meaning rule set forth in General Statutes § 1-2z in construing statutes . . . .'' *Clark* v. *Waterford, Cohanzie Fire Dept.*, 346 Conn. 711, 725, 295 A.3d 889 (2023). Because the present case does not present a time-tested agency interpretation, and because no appellate court has considered whether a finding of a permanent injury under § 31-307 (c) entitles a claimant to § 31-308 (b) permanency benefits as a matter of law, our review is plenary.

By way of background, workers' compensation claimants may receive either "special'' or "specific'' benefits, depending on the extent and nature of their injuries. Special benefits, such as temporary, total incapacity benefits, "continue only as long as there is an impairment of wage earning power . . . .'' *Brennan* v. *Waterbury*, supra, 331 Conn. 685. In contrast, specific benefits, like permanency benefits, are awarded "for a fixed period in relation to the degree of impairment of a body part.'' Id.

Esposito *v.* Stamford

Section 31-307 provides for temporary, total incapacity benefits, which are considered special benefits. Id. Section 31-307 (a) provides in relevant part: "If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the injured employee's average weekly earnings as of the date of the injury . . . ." Section 31-307 (c) enumerates a list of injuries that are considered to cause total incapacity, including "[t]otal and permanent loss of sight of both eyes, or the reduction to one-tenth or less of normal vision . . . ." General Statutes § 31-307 (c) (1). The statute is designed to compensate claimants for the loss of earning capacity, with compensation amounts dependent on the capacity to work. See *Gardner* v. *Dept. of Mental Health & Addiction Services*, 223 Conn. App. 221, 232, 308 A.3d 550, cert. granted, 348 Conn. 954, 309 A.3d 304 (2024).

In contrast, § 31-308 authorizes the payment of permanent partial disability benefits, or permanency benefits. Injured employees who qualify for permanency benefits receive "a weekly compensation equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by the injured employee before his injury . . . ." General Statutes § 31-308 (a). Subsection (b) of § 31-308 lists injuries that qualify under the statute for permanency benefits and includes, for one eye, "[c]omplete and permanent loss of sight in, or reduction of sight to one-tenth or less of normal vision . . . ." The statute is intended to compensate injured employees "for the loss, or loss of use, of a body part." *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 577, 986 A.2d 1023 (2010); see *Gardner* v. *Dept. of Mental Health & Addiction Services*, supra, 223 Conn. App. 236–37. Pursuant to § 31-308 (d), in the event of a claim-

ant's death, such benefits may be paid to his surviving spouse or his presumptive dependent, as defined by § 31-275 (19). See *Churchville* v. *Bruce R. Daly Mechanical Contractor,* 299 Conn. 185, 191–92, 8 A.3d 507 (2010).

It is well settled that, pursuant to General Statutes § 31-295 (c), a claimant's entitlement to permanency benefits under § 31-308 (b) vests once the claimant has reached maximum medical improvement. See, e.g., *Brennan* v. *Waterbury*, supra, 331 Conn. 696; *Gardner* v. *Dept. of Mental Health & Addiction Services*, supra, 223 Conn. App. 237–38; see also *McCurdy* v. *State*, 227 Conn. 261, 268, 630 A.2d 64 (1993); *Osterlund* v. *State*, 129 Conn. 591, 598, 30 A.2d 393 (1943). The right to permanency benefits automatically vests once maximum medical improvement is reached, even if the claimant has not affirmatively requested those benefits. *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 299 Conn. 191. A finding of maximum medical improvement requires a determination of the specific date that a claimant has reached maximum medical improvement; that date is significant for two reasons. First, the date of maximum medical improvement is when "the *right* to permanent disability benefits . . . is established . . . ." (Emphasis in original.) *Brennan* v. *Waterbury*, supra, 695. Second, that date establishes the point at which "the *degree* of permanent impairment (loss of, or loss of use of a body part) can be assessed, which will determine the employer's payment obligations . . . ." (Emphasis in original.) Id., 696.

Although permanency benefits may be awarded posthumously, such an award requires the existence of a supporting record containing a finding of maximum medical improvement by permanent partial disability ratings or separate reports or medical evaluations expressly stating that the claimant has reached maximum medical improvement. See *Churchville* v. *Bruce R.*

Esposito *v.* Stamford

*Daly Mechanical Contractor*, supra, 299 Conn. 188–90 (record established that claimant underwent multiple medical evaluations to determine extent of his disability, and multiple physicians found that he had reached some percentage of maximum medical improvement); *McCurdy* v. *State*, supra, 227 Conn. 263–64 (claimant was assigned permanent partial disability rating of 70 percent, and separate report stated that he had reached maximum medical improvement prior to his death).

The "rule against double compensation prohibits [the] concurrent payment" of total incapacity benefits under § 31-307 (c) and permanency benefits under § 31-308 (b) for "the same incident." *Paternostro* v. *Edward Coon Co.*, 217 Conn. 42, 49, 583 A.2d 1293 (1991). Rather, § 31-308 permanency benefits are paid consecutively to § 31-307 total incapacity benefits because both statutes compensate an employee for a different type of loss. See *Olmstead* v. *Lamphier*, 93 Conn. 20, 22–23, 104 A. 488 (1918); see also *Paternostro* v. *Edward Coon Co.*, supra, 47–48 (discussing how new language added to predecessor statute of § 31-308 (b) did not overrule this court's previous holding that total incapacity benefits and permanency benefits can be paid consecutively). Therefore, an award of § 31-307 total incapacity benefits does not discharge the employer's obligation to pay § 31-308 permanency benefits sometime in the future. *Cappellino* v. *Cheshire*, 226 Conn. 569, 578, 628 A.2d 595 (1993).

In determining whether a claimant has established maximum medical improvement for purposes of permanency benefits under § 31-308, we find instructive our recent decision in *Brennan* v. *Waterbury*, supra, 331 Conn. 672. In *Brennan*, the commissioner had agreed with the claim that the decedent, Thomas Brennan, had clearly reached maximum medical improvement during his lifetime and ordered the defendant city to pay the executor of Brennan's estate benefits for 80 percent

Esposito *v.* Stamford

permanent partial disability of Brennan's heart pursuant to the heart and hypertension statute, General Statutes § 7-433c, and § 31-308. See id., 679–80, 693–94. We concluded that permanent disability benefits can mature "only after the degree of permanency has been fixed by way of an award or an agreement between the parties sufficient to establish a binding meeting of the minds" and, accordingly, remanded the case to the commissioner for this finding. Id., 697; see id., 700. Remand to the commissioner for additional findings was required because we could not "state with certainty that the unpaid portion of the 80 percent [permanency] benefits necessarily matured before [Brennan's] death," insofar as there was a lack of necessary findings on critical issues. Id., 694. First, the commissioner's award of benefits simply stated that Brennan had established a compensable condition under § 7-433c but did not state that maximum medical improvement had been reached or that there was a permanent partial disability rating; three medical experts gave assessments of Brennan's disability varying from 50 to 80 percent. See id., 676–77, 698. Second, there was no voluntary agreement that had been submitted to the commissioner for approval during the decedent's lifetime, and a draft agreement that had been presented was not signed by the defendant city. See id., 698. Third, there was no evidence of a meeting of the minds on the degree of permanency to be assigned. See id., 699. Therefore, we remanded the case to the commissioner to determine the amount of benefits due. Id., 700.

Guided by *Brennan*, we now consider whether the record in the present case establishes that the decedent achieved maximum medical improvement during his lifetime, thus entitling him to permanency benefits under § 31-308.[8] We conclude that the decedent did

[8] The dissent asserts that we misread *Brennan* because the "central issue in the present case involves when benefits under § 31-308 (b) *vest*, not when they *mature*," insofar as "benefits vest when the claimant's injury becomes

Esposito *v.* Stamford

not reach maximum medical improvement during his lifetime because the record lacks the requisite finding to that effect, as contemplated by *Brennan*. See id., 697.

First, the record lacks a clear permanent partial disability rating, or an agreement to that effect between the decedent and the defendants that would furnish a basis for the requisite finding of maximum medical improvement. See id., 698–99. Although the decedent's physicians characterized his condition as "one tenth or less of normal uncorrected vision" when he was originally examined and treated between 1982 and 1995, there is no other indication that the physicians determined that that particular degree of vision loss constituted any percentage of maximum medical improvement. Nor was there an agreement between the parties establishing whether the decedent had reached any percentage of maximum medical improvement. The absence of either of these items from the record is particularly

---

permanent; they mature when they become payable. The issue of maturation does not relate to *when* the benefits become an entitlement, but *who has the right to receive the benefits* to which the claimant is entitled after death— the estate, or the dependents." (Emphasis in original.) Part II B of the dissenting opinion. We disagree with the dissent's reading of *Brennan* on this point. In *Brennan*, we observed that "this court occasionally has stated that the benefits did not 'accrue' because there had been no determination whether, or the date [on] which, the claimant reached maximum medical improvement," and stated: "We do not read these references to accrual to mean that [Brennan's] benefits would have matured if that date had been established irrespective of whether the degree of permanent disability had been established. Rather, *we construe such references as equivalent to vesting, in that the right to such benefits would be established when the date is fixed.* An unfortunate feature of our workers' compensation jurisprudence is a lack of consistency in terminology." (Emphasis added.) *Brennan* v. *Waterbury*, supra, 331 Conn. 695 n.17. Regardless of the terminology in the workers' compensation lexicon, *Brennan* indicates that the key finding for establishing entitlement to § 31-308 (b) permanency benefits—which is lacking in this case—is the degree of permanency via establishing maximum medical improvement. See id., 695–96. Who is entitled to receive those benefits after the death of the original claimant, and at which point, is an issue that we simply do not reach given the lack of that threshold finding. See footnotes 6 and 7 of this opinion.

Esposito *v.* Stamford

significant in light of the decedent's psychogenic blindness diagnosis, which suggests that there could well have been room for the improvement of his condition.

Relying on this court's decisions in *McCurdy* v. *State*, supra, 227 Conn. 261, and *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 299 Conn. 185, the plaintiff argues that the board improperly focused on the decedent's failure to seek permanency benefits during his lifetime and the lack of any predeath order or award of benefits. She contends that, under *McCurdy* and *Churchville*, the decedent had reached maximum medical improvement and became entitled to permanency benefits during his lifetime as a matter of law, thus rendering unnecessary an order for the payment of permanency benefits. Although we agree with the plaintiff that this court's decisions in *McCurdy* and *Churchville* do not require a decedent to have affirmatively requested permanency benefits during his or her lifetime in order for the decedent's surviving spouse to receive the benefits posthumously, those cases are distinguishable from the present case. In the present case, the board's decision reflected that permanency, including the degree of disability, had not been established given the lack of a finding of maximum medical improvement or an agreement between the parties. In contrast, in both *McCurdy* and *Churchville*, there was no dispute as to whether the decedent had reached maximum medical improvement. See *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 189–90 (board had upheld commissioner's finding that decedent "suffered a 10 percent permanent partial disability to his right shoulder and a 32 percent permanent partial disability to his lumbar spine"); *McCurdy* v. *State*, supra, 266–67 (there was no dispute as to degree of disability and realization of maximum medical improvement when decedent was rated by phy-

Esposito *v.* Stamford

sician as having 70 percent permanent partial disability). Thus, the factual records in both *McCurdy* and *Churchville* bore some consensus of a permanency rating or a finding by the commissioner that signified a meeting of the minds, consistent with the standard later articulated in *Brennan* v. *Waterbury*, supra, 331 Conn. 697.

The plaintiff, joined by the dissent, also contends that the 1998 finding, which was echoed by the administrative law judge in the decision at issue in this appeal, established that the decedent had reached maximum medical improvement, despite the lack of express language to that effect in the finding. See part II A and footnote 9 of the dissenting opinion. We disagree. In the 1998 finding, the commissioner identified the issue to be "[t]he approval or denial of a form 36 filed and received on April 1, 1998, and alleging that [the decedent's] permanent total disability status is other than it was in 1984." The commissioner ultimately concluded that the decedent's condition continued to meet the § 31-307 (c) standard and ordered the defendants to continue making payments pursuant to that statute. In making the 1998 finding, the commissioner applied only the § 31-307 (c) standard and did not consider maximum medical improvement for purposes of § 31-308 (b), despite characterizing the decedent's condition as the "total and permanent loss of sight or the reduction to one tenth or less of normal vision in both eyes." Accordingly, the commissioner denied the defendants' form 36, which challenged the decedent's entitlement to total incapacity benefits under § 31-307 (c). The record lacked then, as it lacks now, any medical confirmation of a permanency rating, any consideration of how the hysterical component affected or would have affected that rating, or any form of agreement between the parties regarding the extent of the disability. Accordingly, that the record established an entitlement to § 31-307

Esposito *v.* Stamford

(c) benefits does not mean that it established the maximum medical improvement required for the award of benefits pursuant to § 31-308 (b).[9] See *Cappellino* v. *Cheshire*, supra, 226 Conn. 578 (observing that "[the] two types of benefits [under §§ 31-307 and 31-308] compensate an employee for different types of loss" in concluding that "the payment of temporary total [incapacity] benefits [does not] automatically [discharge the employer's] obligation under [a] voluntary agreement to pay [permanency] benefits").

The plaintiff argues, and the dissent also asserts, that, because both §§ 31-307 (c) and 31-308 (b) use identical language regarding an eye disability, qualifying for one

[9] The dissent characterizes our conclusion as the product of failing to give appropriate appellate deference, as the factual findings of an administrative adjudicator, to the administrative law judge's conclusion that the decedent had reached maximum medical improvement and that his right to permanency benefits vested by June 9, 1998—the date of the 1998 finding about the permanency of the decedent's vision loss. See part II A of the dissenting opinion; see, e.g., *Coughlin* v. *Stamford Fire Dept.*, supra, 334 Conn. 862–63; *Birnie* v. *Electric Boat Corp.*, 288 Conn. 392, 404, 953 A.2d 28 (2008). We respectfully disagree with the dissent's characterization of our analysis as failing to afford proper appellate deference to the administrative law judge's 2022 decision. Unlike the dissent, we do not read the administrative law judge's 2022 decision as finding new facts but, instead, as giving legal effect to the 1998 finding concerning the plaintiff's claim for permanency benefits under § 31-308 (b). Put differently, rather than considering the simpler appellate question of whether the 1998 finding is grounded in the factual record— a proposition with which we have no quarrel with the dissent—the actual question in this appeal is about the effect of the 1998 finding concerning the § 31-308 (b) claim. It distills to a question of preclusion, given the difference in the applicable legal standards. See *Birnie* v. *Electric Boat Corp.*, supra, 413. Because the commissioner was not asked to, and did not, consider what has become the critical question of maximum medical improvement in making the 1998 finding, our decision not to give it preclusive effect on that issue simply does not amount to failing to give the administrative law judge's 2022 decision the appropriate level of appellate deference. To the extent that this issue may distill to a simple question of appellate deference to the fact finder—as the dissent sees it—we observe that the lack of clarity in the plaintiff's briefing on this point, compounded by the lack of a reply brief, contributes to our understanding of the issue as a question of law.

Esposito *v.* Stamford

benefit entitles a claimant to qualify for the other as a matter of law. See part II A of the dissenting opinion. The plaintiff also contends that the lack of "maximum medical improvement" language in § 31-308 (b) means that having a permanent incapacity under § 31-307 (c) is sufficient to comply with § 31-308 (b). However, both propositions are inconsistent with our long established case law. First, there is no case law suggesting that qualification for benefits under § 31-307 (c) similarly qualifies a claimant for permanency benefits under § 31-308 (b). Instead, *Brennan* states that permanency benefits mature under § 31-308 only *after* the degree of permanency is fixed by either an award or an agreement between the parties, which is a standard that does not apply to § 31-307 benefits. See *Brennan* v. *Waterbury*, supra, 331 Conn. 697. Therefore, there is no qualification as a matter of law, despite some general similarity between the two statutes and particularly the injuries that they cover. See *Vitti* v. *Milford*, 336 Conn. 654, 666, 249 A.3d 726 (2020) ("a holding that § 31-308 (b) is triggered automatically upon the removal of a native organ, without regard to the ameliorative effects of a transplant, would be inconsistent with nearly one century of case law governing the concept of maximum medical improvement"). Second, *Brennan* did not concern a § 31-307 claim and, instead, considered the proof necessary to establish maximum medical improvement for § 31-308 purposes, even though the statute itself does not expressly require proof of maximum medical improvement to establish an entitlement to benefits. See *Brennan* v. *Waterbury*, supra, 679, 696–97. *Brennan*'s requirement of a meeting of the minds as to a clear permanency rating via an award or an agreement between the parties ensures that (1) the claimant is receiving the full and correct amount of benefits that he or she is entitled to, and (2) the employer is put on notice of any potential change in benefits. See id., 697.

Esposito *v.* Stamford

Finally, the plaintiff argues that, because the decedent suffered from a compensable injury that did not change in degree for sixteen years, his injury necessarily constitutes a complete and permanent disability for purposes of § 31-308. We disagree. That there was no further updating of the decedent's medical record with respect to his eye injuries between 1995 and his death in 2020 does not mean as a matter of law that his condition remained unchanged since 1984. This is particularly important given the 1986 diagnosis of psychogenic blindness, which could well have affected a permanency rating. Although there is evidence in the record that might well ultimately support a finding of maximum medical improvement, we do not agree with the plaintiff and the dissent that the 1998 finding, as viewed by the administrative law judge, conclusively established the maximum medical improvement required for an award of permanency benefits under § 31-308 (b). See part II A of the dissenting opinion.

Accordingly, we conclude that a finding of total incapacity pursuant to § 31-307 (c) does not create an entitlement to permanency benefits under § 31-308 (b) as a matter of law, in the absence of a permanency finding or an agreement sufficient for a binding meeting of the minds within the meaning of *Brennan* v. *Waterbury*, supra, 331 Conn. 697. Because the record does not establish that the decedent had reached maximum medical improvement, thus entitling him to permanency benefits pursuant to § 31-308, we need not reach the plaintiff's remaining claims, or the alternative grounds on which the board relied in affirming the decision of the administrative law judge. See footnotes 6 and 7 of this opinion.

The decision of the Compensation Review Board is affirmed.

Esposito *v.* Stamford

In this opinion D'AURIA, MULLINS and DANNEHY, Js., concurred.

ECKER, J., with whom McDONALD and ALEXANDER, Js., join, dissenting. Properly construing and applying Connecticut workers' compensation law can be a challenge due to the labyrinthine statutes and intricate case law that has attached to the statutory framework over the years. The present case, however, can be resolved by straightforward application of the relevant statutes and the basic principles underlying them. In my view, the majority's analysis departs from the applicable statutory directives, overlooking the operative principles established by those statutes, and misinterpreting the pertinent case law, especially our recent decision in *Brennan* v. *Waterbury*, 331 Conn. 672, 207 A.3d 1 (2019). I respectfully dissent.

I

The primary issue raised in this appeal is whether the decedent, Robert Esposito,[1] was entitled to permanent disability benefits under General Statutes § 31-308 (b) at the time of his death in 2020.[2] On March 22, 2022, following a formal hearing, the administrative law judge for the Seventh District of the Workers' Compensation

_____

[1] As the majority notes, "[t]he decedent was the original plaintiff in this matter before the Workers' Compensation Commission. After his death, Roseann Esposito, his surviving spouse, was added as a plaintiff." Footnote 1 of the majority opinion. Like the majority, I refer to Roseann Esposito as the plaintiff and Robert Esposito as the decedent for the sake of simplicity.

[2] Two additional issues arise if the decedent was entitled to permanent disability benefits under § 31-308 (b): (1) whether the plaintiff, Roseann Esposito, was entitled to receive those benefits as the decedent's surviving spouse at the time of his death, and (2) whether the defendants—the city of Stamford and its third-party administrator for workers' compensation benefits, PMA Management Corporation of New England—were entitled to a credit against any such permanent disability award for incapacity payments made to the decedent pursuant to General Statutes § 31-307 (c) from the date that his injuries became permanent in 1998 until the date of his death in 2020. See footnote 17 of this opinion.

Esposito *v.* Stamford

Commission found that the decedent's loss of vision in both eyes had become a permanent condition and, therefore, that his entitlement to permanent disability benefits pursuant to § 31-308 (b) had vested no later than June 9, 1998.[3] The administrative law judge also concluded, however, that the defendants—the city of Stamford (city) and its third-party administrator for workers' compensation benefits, PMA Management Corporation of New England—were entitled to an off-setting credit for total incapacity benefits paid to the decedent during his lifetime under General Statutes § 31-307 (c), with the net result that no actual benefits were payable because the amount of the credit exceeded the amount of any benefits due. The Compensation Review Board (board) upheld the award but did so on the alternative ground that the decedent's "inchoate entitlement to 235 weeks of permanency benefits for each eye" never vested because the record contained no proof of an "assignment or award of a permanent partial disability rating or an agreement between the parties" establishing such a rating. (Internal quotation marks omitted.)

Four foundational points require reversal of the board's decision.

First, it is axiomatic that the two categories of workers' compensation benefits under consideration serve entirely different purposes, and, as such, both types of

_____

[3] I emphasize at the outset that the award under review in this case is *not* the award of permanent incapacity benefits made by Workers' Compensation Commissioner Leonard S. Paoletta on June 9, 1998. Rather, the award at issue is the award of permanent disability benefits made by Administrative Law Judge Randy L. Cohen on March 22, 2022.

Like the majority, I refer to Commissioner Paoletta as the commissioner and to Administrative Law Judge Cohen as the administrative law judge, in accordance with the titles given to administrative adjudicators at the time Commissioner Paoletta and Administrative Law Judge Cohen rendered their respective findings and awards. See footnote 3 of the majority opinion; see also General Statutes § 31-275d.

Esposito *v.* Stamford

benefits are payable for the same injury to the same worker under our workers' compensation laws.[4] Section 31-307 benefits, properly known as total incapacity benefits, provide compensation for wages lost when an employee is incapacitated by a work related injury to a degree that the employee is completely unable to work as a result. See General Statutes § 31-307 (a) ("[i]f any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the injured employee's average weekly earnings as of the date of the injury");[5] see also *Churchville* v. *Bruce R. Daly Mechanical Contractor*, 299 Conn. 185, 193, 8 A.3d 507 (2010) (noting that "[i]ncapacity, as that term is used under the Workers' Compensation Act, means incapacity to work, as distinguished from the loss or loss of use of a member of the body," and that "[e]ntitlement to incapacity benefits depends on the employee's capacity to work"). In this case, the decedent, during his lifetime, was paid total incapacity benefits under subsection (c) of § 31-307, which deems six particular injuries—including the injury sustained by the decedent in this case, namely, the "[t]otal and permanent loss of

[4] As we have pointed out previously, our past cases sometimes have used imprecise language, which has generated confusion. See *Brennan* v. *Waterbury*, supra, 331 Conn. 695 n.17 ("[a]n unfortunate feature of our workers' compensation jurisprudence is a lack of consistency in terminology"). When we use terms like "disability," "incapacity," "vested," "matured," "owed," or "due" imprecisely in these cases, we invite confusion. Courts, including this one, must take special care to adhere to uniform terminology if we hope to achieve and maintain doctrinal clarity.

[5] The Workers' Compensation Act also provides benefits for partial incapacity caused by a work related injury. See General Statutes § 31-308 (a) ("[i]f any injury for which compensation is provided under the provisions of this chapter results in partial incapacity, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by the injured employee before his injury"). Section 31-308 (a) benefits were not sought or awarded in this case.

Esposito *v.* Stamford

sight of both eyes, or the reduction to one-tenth or less of normal vision''—to be injuries that ''shall be considered as causing total incapacity'' and which mandates that ''compensation shall be paid accordingly . . . .'' General Statutes § 31-307 (c) (1).

Section 31-308 (b) benefits, unlike total incapacity benefits, do not compensate the claimant for loss of earnings. Instead, § 31-308 (b) benefits, properly known as disability benefits, compensate an injured employee for the loss (or loss of use) of a body part or organ,[6] and are paid in recognition of the fact that a loss of

---

[6] Section 31-308 (b) provides benefits for the total or partial disability of a lengthy list of particular body parts and bodily functions (which the statute refers to as "the member or organ"). Total disability benefits are awarded for the loss of (or "the complete and permanent loss of use of") the injured member or organ and are calculated based on the number of weeks assigned by the statute to that particular member or organ. General Statutes § 31-308 (b). To use as an example the injury sustained by the decedent in the present case, the version of § 31-308 (b) in effect at the time of the injury to the decedent in 1982 provided that the "complete and permanent loss of the sight of one eye, or the reduction in one eye to one-tenth or less of normal vision" entitled the claimant to 235 weeks of compensation. General Statutes (Rev. to 1981) § 31-308 (b) (7). A claimant with a permanent total disability under this criterion is eligible to receive total disability payments equal to 235 multiplied by the claimant's weekly rate of compensation, which the statute provides is "sixty-six and two-thirds per cent of the average weekly earnings of the injured employee," with specified adjustments. General Statutes (Rev. to 1981) § 31-308 (b). This explains why the administrative law judge in the present case concluded that, "pursuant to § 31-308 (b) and the permanency schedule that was in effect on the date of [the decedent's] injury," the decedent "was entitled to an award of 235 weeks for each eye."

In addition to creating an entitlement to mandatory benefits for permanent total disability, § 31-308 (b) also gives the administrative law judge the discretion to award compensation to an injured employee who suffers only "a permanent partial loss of the use of a member," or whose "injury results in a permanent partial loss of function . . . ." The amount of permanent partial disability benefits is calculated by multiplying the award for total disability by the percentage of disability assigned or awarded. For example, if the claimant has lost the use of 50 percent of one eye, the administrative law judge would have been authorized to award the claimant 117.5 weeks of partial disability benefits (50 percent of 235 weeks). The injury in the present case involves a total disability; partial disability benefits were not sought or awarded in this case.

earnings is not the only harm sustained by a worker whose injury is permanent. "Compensation for the disability takes the form of payment of medical expenses . . . [as well as] specific indemnity awards, which compensate the injured employee for the lifetime handicap that results from the permanent loss of, or loss of use of, a scheduled body part." (Citation omitted.) *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 299 Conn. 192; see id. (citing § 31-308 (b) as example of specific indemnity award that compensates employee for "[the] loss of or [the] loss of use of [a] member [of the body]"); see also *Brennan* v. *Waterbury*, supra, 331 Conn. 693 n.16 (quoting *Churchville* for proposition that " 'it is clear that these two types of benefits [namely, incapacity and disability benefits] compensate an employee for different types of loss' "); R. Carter et al., 19 Connecticut Practice Series: Workers' Compensation Law (2008) § 8:77, p. 352 ("Unlike total [incapacity] benefits payable under . . . § 31-307, temporary partial disability benefits payable under . . . § 31-308 (a), or wage loss benefits payable under [General Statutes] § 31-308a, permanent partial disability benefits [under § 31-308 (b)] are not a substitute for lost earning capacity. Early in the history of the [Workers' Compensation] Act, [this] [c]ourt emphasized that permanent partial disability payments [under § 31-308 (b)] are not wage replacement benefits, but are designed to compensate an injured employee for the handicap resulting from a workplace injury.").

The second foundational point, which logically follows from the first, is that these two types of benefits are not mutually exclusive. Indeed, § 31-308 expressly provides that permanent disability benefits provided thereunder shall be "*in addition to the usual compensation for total incapacity* but in lieu of all other payments for compensation . . . ." (Emphasis added.) General Statutes § 31-308 (b); see *Churchville* v. *Bruce*

Esposito *v.* Stamford

*R. Daly Mechanical Contractor*, supra, 299 Conn. 192 ("[b]enefits available under the [Workers' Compensation Act] serve the dual function of compensating for the disability arising from the injury and for the loss of earning power resulting from that injury" (internal quotation marks omitted)); *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 193 ("We have noted that § 31-308 specifically provides that compensation for permanent partial disability shall be in addition to the usual compensation for total incapacity [under § 31-307]. . . . [I]t is clear that these two types of benefits compensate an employee for different types of loss . . . and that the payment of . . . § 31-307 temporary total [incapacity] benefits does not discharge the obligation to pay § 31-308 permanent partial disability benefits at some point in the future." (Citations omitted; internal quotation marks omitted.)).

The limitation on these dual statutory entitlements is that total incapacity payments and permanent disability benefits cannot be received concurrently; only successive payments are permissible. See *Paternostro* v. *Edward Coon Co.*, 217 Conn. 42, 49, 583 A.2d 1293 (1991) (concluding "that the rule against double compensation prohibits [the] concurrent payment of specific indemnity benefits for permanent partial impairment under § 31-308 (b) and benefits for total incapacity under § 31-307 as a result of the same incident"); see also *McCurdy* v. *State*, 227 Conn. 261, 267 n.8, 630 A.2d 64 (1993) (using imprecise terminology but noting that "[an employee] can at once be *temporarily* totally disabled and *permanently* partially disabled . . . although he cannot collect for both at the same time" (citation omitted; emphasis in original)); *Cappellino* v. *Cheshire*, 226 Conn. 569, 577–78, 628 A.2d 595 (1993) ("we have held that the [Workers' Compensation Act] prohibits [the] *concurrent* payment of benefits for permanent partial disability and temporary total [incapacity]" (emphasis

Esposito *v.* Stamford

in original)); cf. *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 299 Conn. 193 ("it is clear that . . . the payment of . . . § 31-307 temporary total [incapacity] benefits does not discharge the obligation to pay § 31-308 permanent partial disability benefits at some point in the future" (citation omitted; internal quotation marks omitted)).

The third point is that, although permanent disability payments under § 31-308 (b) are not *payable* until a claim is made for those benefits (by the claimant or the claimant's dependents or heirs, as the case may be), it is well settled that a claimant has a vested entitlement to those benefits when the claimant's injury becomes permanent. See *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 299 Conn. 195 (observing that "[an] employee [who] has reached maximum medical improvement" has "[a vested] right to a disability benefit award"); *McCurdy* v. *State*, supra, 227 Conn. 268 ("[w]e have long held that an injured worker *has a right* to a permanent partial disability award once he or she reaches maximum medical improvement" (emphasis added)). These cases are rooted in the recognition that benefits under § 31-308 (b) compensate the injured employee for "the complete and permanent loss of use of the member or organ referred to . . . ." General Statutes § 31-308 (b). It is clear under Connecticut law that a claimant's right to permanent disability benefits vests under the statute when the disability becomes permanent.

*When* an injury becomes permanent is determined by reference to equally well settled principles. Permanency exists at "that time when there is no reasonable prognosis for complete or partial cure and no improvement in the physical condition or appearance of the injured body member can be reasonably made." *Cappellino* v. *Cheshire*, 27 Conn. App. 699, 703 n.2, 608 A.2d 1185 (1992) (citing *Wrenn* v. *Connecticut Brass Co.*, 96 Conn.

Esposito *v.* Stamford

35, 38, 112 A. 638 (1921)), aff'd, 226 Conn. 569, 628 A.2d 595 (1993). This event is also referred to as the time when the claimant reaches maximum medical improvement. See *Cappellino* v. *Cheshire*, supra, 27 Conn. App. 703 n.2. In other words, a complete and permanent loss of use of the member or organ exists when the condition is probably not going to improve. At that time, the injury is permanent, i.e., has reached maximum medical improvement, and the claimant has a vested right to disability benefits under § 31-308 (b). See id.; see also *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 299 Conn. 195.

Fourth, when a claimant dies with vested disability benefits remaining unpaid, the right to payment of those vested benefits does not terminate. See *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 299 Conn. 191 ("[w]e have long recognized that the beneficiaries of the Workers' Compensation Act . . . include both the injured employee and his or her dependents" (citation omitted)). The issue is not whether the vested but unpaid benefits are payable, but *to whom* they are payable. That question is resolved by determining whether the unpaid benefits are matured or unmatured, because that determination establishes whether the vested entitlement passes to (1) the claimant's estate, or (2) the claimant's dependents. See *Brennan* v. *Waterbury*, supra, 331 Conn. 684–85. As we explained in *Brennan*, "[s]ince the earliest days of our workers' compensation law, compensation owed to a claimant but not paid before his death was distributed according to whether the benefit 'accrued' or 'matured' during the claimant's lifetime." (Footnote omitted.) Id., 684. Matured benefits, those which "accrue[d] in [the claimant's] lifetime [but which remain] unpaid," become "an asset of the [claimant's] estate" and are distributed accordingly.[7] (Internal

---

[7] See 7 L. Larson & T. Robinson, Larson's Workers' Compensation Law (2024) § 89.02 ("[a]ccrued but unpaid installments are, of course, an asset of the estate, like any other debt").

Esposito *v.* Stamford

quotation marks omitted.) Id., 684. By contrast, "the [claimant's] dependents alone have the right to the *unmatured* part of the award of compensation . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 685, quoting *Bassett* v. *Stratford Lumber Co.*, 105 Conn. 297, 303–304, 135 A. 574 (1926). The concept of maturation is thus relevant to determining the proper recipient of vested benefits upon a claimant's death.[8]

These four basic points, properly applied, resolve this case. Because total incapacity benefits and permanent disability benefits serve different purposes and compensate different losses, the fact that the decedent received § 31-307 benefits in no way precludes the right of his heirs or dependents to receive § 31-308 (b) benefits after the § 31-307 benefits cease. The decedent's right to § 31-308 (b) benefits vested when he became eligible to receive those benefits, which was on June 9, 1998, the date the administrative law judge, in her findings and award issued on March 22, 2022, expressly found that the injuries to his eyes were total and permanent. This finding controls the outcome of this case.

II

The majority opinion contains three intertwined errors. The first is the lack of deference the majority gives to the administrative law judge's express factual finding, contained in her findings and award dated March 22, 2022, that the decedent's loss of vision became permanent no later than June 9, 1998, thereby vesting his right to permanent disability benefits under § 31-308 (b) as of that date. The other two errors involve the majority's interpretation of our recent decision in *Brennan* and its application to this case.

---

[8] To illustrate, take the hypothetical example of a claimant who is entitled to permanent disability benefits for a period of 235 weeks and dies after 35 weeks. Any benefits that have not been yet paid for those 35 weeks have matured (and are payable to the claimant's estate), whereas the 200 weeks of unmatured benefits are owed to the claimant's dependents.

Esposito *v.* Stamford

A

The principal flaw in the majority opinion is its failure to defer to the findings and award issued by the administrative law judge, who concluded that the decedent's loss of vision became permanent no later than June 9, 1998, thereby vesting his right to permanent disability benefits under § 31-308 (b) as of that date.[9] The administrative law judge's finding that the decedent "suffered from a reduction to one tenth or less of normal vision in both of his eyes" satisfies § 31-308 (b) to the letter.[10] There is strong factual support in the record supporting the administrative law judge's conclusion. It should not be subjected to second-guessing by either the board or this court.

The majority characterizes the plaintiff's argument as claiming an entitlement to disability benefits under § 31-308 (b) "as a matter of law" because the decedent was previously awarded total incapacity benefits under § 31-307 (c). That is not the plaintiff's claim. What the plaintiff argues is that, in 1998, the commissioner made the factual finding that the decedent's loss of vision was permanent, and that the administrative law judge's factual findings in 2022 reached the same conclusion

_____

[9] The majority misreads this dissent in claiming that this court should afford the commissioner's 1998 finding and award "appropriate appellate deference, as the factual findings of an administrative adjudicator . . . ." Footnote 9 of the majority opinion. That is not my argument. The factual findings at issue in this appeal are those made by the administrative law judge in 2022, not those made by the commissioner in 1998. The administrative law judge did not consider herself bound by the commissioner's findings; nor did she give them preclusive effect. Instead, she credited those findings, together with other record evidence, in arriving at her own determination that "the [decedent had] reached maximum medical improvement by June 9, 1998 . . . ." The fact that the administrative law judge's finding was consistent with the conclusions reached by the commissioner does not mean that the finding was not made by the administrative law judge.

[10] Section 31-308 (b) requires the "[c]omplete and permanent loss of sight in, or reduction of sight to one-tenth or less of normal vision," to establish a right to permanent disability benefits.

based on her own review of the evidence. "There can be no dispute," the plaintiff argues, "that [the commissioner's] June 9, 1998 finding and award adjudicated and definitively determined that the [decedent's] vision loss was permanent and remained permanent." The argument continues in the same vein: "The fact that [the commissioner] did not specifically incorporate the phrase 'maximum medical improvement' in his decision does not undo his conclusion that the [decedent's] vision loss remained permanent." The plaintiff then points out, in very clear terms, that "the administrative law judge [who rendered the § 31-308 (b) award in 2022] . . . *agreed. She concluded that the* [*decedent*] *reached maximum medical improvement by June 9, 1998, and that the* [*decedent's*] *entitlement to permanency benefits vested no later than that date.*" (Emphasis added.)

The plaintiff also contends that, wholly apart from the commissioner's findings in 1998, the undisputed "chronicity" of the impairment itself provided sufficient evidence of its permanency to support the administrative law judge's conclusion, in 2022, that the loss of vision was both total and permanent: "Even if [this court] were to completely disregard [the commissioner's] finding and award, the adjudicated fact that the [decedent] suffered from a compensable injury that caused statutorily defined total incapacity, per § 31-307, over approximately thirty-eight . . . years—from the injury [in 1982] until the [decedent's] death [in 2020]— would still support the reasonable inference that [his] vision loss was permanent. The impairment persisted over a period of almost four . . . decades. The [decedent] died with the condition unchanged from its onset. The chronicity of the condition, alone, provides sufficient evidentiary support to infer that it was permanent during his lifetime. If the [decedent's] vision loss was not permanent, it begs the question as to what else is needed to establish permanency." In other words, the

Esposito *v.* Stamford

fact that total incapacity benefits were paid to the decedent from the date of injury until his death is evidence supporting the reasonable conclusion that his medical condition was *in fact* permanent.

The issue, then, is not whether the plaintiff is entitled to § 31-308 (b) benefits as a matter of law. The issue is whether the record contains any support for the administrative law judge's factual finding that the decedent's loss of vision was permanent no later than June 9, 1998. We cannot reject this finding because we would have concluded otherwise. "[T]he power and duty of determining the facts rests [with] the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539, 542 A.2d 1118 (1988); see *Coughlin* v. *Stamford Fire Dept.*, 334 Conn. 857, 862–63, 224 A.3d 1161 (2020). "Neither the . . . board nor this court has the power to retry facts." (Internal quotation marks omitted.) *Birnie* v. *Electric Boat Corp.*, 288 Conn. 392, 404, 953 A.2d 28 (2008). Instead, "[o]n appeal, the board must determine whether there is any evidence in the record to support the commissioner's findings and award. . . . Our scope of review of [the] actions of the [board] is [similarly] . . . limited. . . . [However] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts [that] are admitted or undisputed." (Internal quotation marks omitted.) *Pantanella* v. *Enfield Ford, Inc.*, 65 Conn. App. 46, 52–53, 782 A.2d 141, cert. denied, 258 Conn. 930, 783 A.2d 1029 (2001). "To the extent that the commissioner's finding discloses facts, his finding cannot be changed *unless the record discloses that the finding includes facts found*

*without evidence or fails to include material facts* [*that*] *are admitted or undisputed.*'' (Emphasis in original; internal quotation marks omitted.) *McCurdy* v. *State*, supra, 227 Conn. 267.

With respect to factual findings of permanency in particular, the commissioner ''can under certain conditions find the injured worker is or is not at maximum medical improvement and *that decision is a factual decision* [*that*] *rests solely with the* [*commissioner*] *as the arbitrator of fact.*'' (Emphasis added.) 3 A. Sevarino, Connecticut Workers' Compensation After Reforms (7th Ed. 2017) § 6.02.6, p. 913; see, e.g., *Ayna* v. *Graebel/ CT Movers, Inc.*, 133 Conn. App. 65, 70–71, 33 A.3d 832 (reviewing ''the commissioner's decision that the plaintiff . . . had reached maximum medical improvement'' as factual finding), cert. denied, 304 Conn. 905, 38 A.3d 1201 (2012); *Ferrara* v. *Hospital of St. Raphael*, 54 Conn. App. 345, 354–55, 735 A.2d 357 (considering ''the . . . claim that the commissioner improperly found that [the plaintiff] had reached maximum medical improvement'' and concluding that surgeon's ''testimony provide[d] reasonable support for the commissioner's determination'' and that ''the board properly upheld the factual determinations of the commissioner''), cert. denied, 251 Conn. 916, 740 A.2d 864 (1999).

The conclusion reached by the administrative law judge in the present case—that disability benefits under § 31-308 (b) vested no later than June 9, 1998—was a factual determination based on her own review of the evidentiary record, which led her to make an express finding that the decedent's eye injuries had become permanent, i.e., had reached maximum medical improvement, during the decedent's lifetime. The administrative law judge observed that the decedent had been ''diagnosed . . . with a '*profound visual loss in both eyes*' '' and ''had been receiving 'total [incapacity] benefits pur-

Esposito *v.* Stamford

suant to § 31-307 . . . since 1984 . . . [for] *total and permanent loss of sight or the reduction to one tenth or less of normal vision in both eyes.*' '' (Emphasis added.) The administrative law judge also noted in her findings that "Commissioner Gerald Kolinsky issued a letter dated June 3, 1985, stating that the [decedent] was 'entitled to permanent total [incapacity] benefits, pursuant to [§] 31-307 . . . due to *total and permanent loss of sight in both eyes.*''[11] (Emphasis added.)

The administrative law judge further noted that a formal hearing had been held before the commissioner in 1998, in response to the city's filing of a form 36 "contesting the [decedent's] continued entitlement to permanent and total disability benefits pursuant to . . . § 31-307 (c)'' based on the city's allegation that '' 'the [decedent's] permanent total disability status is other than it was in 1984.' '' After that hearing, the commissioner "concluded that the [decedent had, indeed, still] satisfied the standard set forth in . . . § 31-307 (c): *total incapacity caused by the reduction to one tenth or less of normal vision in both eyes*, which condition had existed since the original injury of April 24, 1982.'' (Emphasis added.) Because the commissioner denied the form 36, the administrative law judge found that, as of 1998, "there had been no change in the [decedent's] total disability status subsequent to the original injury in 1982.''

The administrative law judge reviewed not only the commissioner's conclusion, but also the evidence supporting that conclusion as presented at the formal hearing in 1998. This evidence consisted of the opinions of various medical experts, including the decedent's treating ophthalmologist, Bruce R. Jacobson. Jacobson

---

[11] Commissioners Paoletta and Kolinsky both mistakenly used the word "disability'' rather than "incapacity.'' The usage is so common that it is probably unfair to call it a mistake. Nonetheless, the terminology is imprecise and can lead to confusion. See footnote 4 of this opinion. No confusion exists here because of the references to § 31-307.

Esposito *v.* Stamford

issued reports regarding the decedent's condition no fewer than six times over a period of twelve years, from 1986 to 1998, and repeatedly stated that the decedent had at best "a visual acuity of 20/200" in both eyes, which is one tenth or less of normal, uncorrected vision. The record also contained the deposition and reports of another ophthalmologist, Roland D. Carlson, who examined the decedent at the city's request in 1985 and 1987. Carlson found that the decedent's "uncorrected vision [in] the right [eye] was 20/200" and that the vision in his "left eye [was] 20/200," as well. Carlson reported that the decedent had "just light perception" of the left eye.[12] Carlson also indicated that the decedent's visual loss could be psychogenic. A psychiatrist, Cyril Waynik, stated that the decedent's "blindness" was "psychogenic," but Waynik also concluded that the "catastrophic injury [that the decedent suffered] had a profoundly incapacitating effect, which because of its long duration and chronicity bode[d] poorly prognostically." Jacobson, the treating ophthalmologist, opined that, regardless of the psychiatric complications, the decedent's visual disability was equal to a visual disability having a "purely organic" cause.[13]

---

[12] Carlson explained that light perception means that "the patient can tell whether you have a flashlight turned on or off."

[13] The case presented a classic battle of the experts. Jacobson and Carlson disagreed on important points. For example, with respect to the "psychogenic overlay" that impacted Carlson's opinion, Jacobson opined that the decedent's "visual disability [was] equal to a visual disability having a purely organic cause." Waynik, the psychiatrist, agreed with Jacobson in this regard. The commissioner and the administrative law judge evidently credited Jacobson's opinions over Carlson's, as they were entitled to do. See, e.g., *Barlow* v. *Commissioner of Correction*, 343 Conn. 347, 368, 273 A.3d 680 (2022) ("It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.)); *Dooley* v. *Leo*, 184 Conn. 583, 586, 440 A.2d 236 (1981) (when "there is strongly conflicting testimony from the expert witnesses, the trier of fact must determine the credibility of that testimony and may believe all, some, or none of the testimony of a particular witness").

Esposito *v.* Stamford

The evidentiary record reviewed by the administrative law judge also contained testimony from the decedent and the plaintiff, his widow, regarding the permanent nature of his vision loss. There was a transcript of the decedent's testimony at the 1998 hearing, at which he was asked whether his "ability to see ha[d] . . . changed" since the incident in 1982. He replied, "[n]ot at all." This evidence, if credited by the administrative law judge, showed that the decedent's condition had not improved at all over sixteen years. The city never subsequently contested the permanent nature of the decedent's vision loss, and no contrary findings were made or orders issued. The record also contained a transcript of the deposition testimony the plaintiff gave in 2021. When asked whether, "after [the] incident took place [in 1982]," she had "observe[d] [the decedent] having problems with his vision," she replied, "[y]es." When asked whether those problems "ever [went] away," she replied, "[n]o." When asked whether the decedent had ever stated "that he thought his vision was improving at any point," she replied, "[n]ever, no."

In light of the foregoing evidence, the administrative law judge concluded in her findings and award, "[c]onsistent with the findings by [the commissioner], [that] the [decedent had] suffered from a reduction to one tenth or less of normal vision in both of his eyes from the original injury [on] April 24, 1982." The administrative law judge further concluded that the decedent had "reached maximum medical improvement by [the date the commissioner's finding and award issued on] June 9, 1998," and that his "entitlement to permanency benefits [pursuant to § 31-308 (b) had] vested no later than . . . June 9, 1998." This is clearly a factual finding.

Applying the proper standard of review, I perceive no basis for this court to conclude that the administrative law judge did not make a factual determination that the decedent had reached maximum medical

improvement as of June 9, 1998. Far from being unreasonable, the determination finds substantial support in the record. Indeed, the majority concedes as much. The majority states: "[a]*lthough there is evidence in the record that might well ultimately support a finding of maximum medical improvement,* we do not agree . . . that the 1998 finding, as viewed by the administrative law judge, conclusively established the maximum medical improvement required for an award of permanency benefits under § 31-308 (b)." (Emphasis added.) The issue on appeal, once again, is not whether the 1998 finding conclusively established maximum medical improvement; it is whether the administrative law judge in 2022 made that finding, which she plainly did, in clear and unambiguous terms. As I previously explained, that finding was based on *all* of the evidence in the record, not merely the commissioner's 1998 finding. The majority acknowledges that there is evidence in the record "that might well" support such a finding. Under these circumstances, there is nothing left to decide regarding the decedent's entitlement to disability benefits under § 31-308 (b).

The majority suggests that the factual findings of the administrative law judge who awarded benefits under § 31-308 (b) in 2022 are not entitled to deference because the administrative law judge made no "new" factual findings but, instead, merely gave "legal effect to the 1998 finding concerning the plaintiff's claim for permanency benefits under § 31-308 (b)." Footnote 9 of the majority opinion. Two points warrant emphasis in response to this suggestion. Perhaps most important, the administrative law judge did, in fact, make her own findings in 2022 after holding a formal hearing at which evidence was taken. I have reviewed that evidence and those findings in detail and will not repeat them here. As I noted previously in this opinion, the administrative law judge plainly did not consider herself bound by

Esposito *v.* Stamford

the commissioner's earlier findings, gave those earlier findings no preclusive effect, and proceeded to reach her own factual conclusions. See footnote 9 of this opinion. The fact that the administrative law judge's finding of permanency was based in part on evidence in the 1998 record, and is consistent with the commissioner's previous findings, does not mean that her factual findings are any less her own or entitled to any less appellate deference.

Second, it is clear that there is no legal prohibition that barred the administrative law judge from awarding benefits under § 31-308 (b) on the basis (in part) of evidence initially submitted in connection with the 1998 hearing regarding § 31-307 (c) benefits. A review of our case law demonstrates that the contrary is true. By using the record and findings supporting the 1998 award of total incapacity benefits under § 31-307 (c) as documentary evidence, among other evidence, showing that the decedent's condition had become permanent at that time for purposes of awarding § 31-308 (b) benefits, the administrative law judge followed the same procedure we adhered to in *McCurdy* v. *State*, supra, 227 Conn. 261. In *McCurdy*, we looked at competing medical reports in the record and independently concluded that maximum medical improvement had been reached, such that the right to permanency benefits had vested in the decedent's lifetime. See id., 263–64, 268–69; see also *Adzima* v. *UAC/Norden Division*, 177 Conn. 107, 116–19, 411 A.2d 924 (1979) (finding that deceased claimant had not reached maximum medical improvement after weighing conflicting medical opinions in record). The administrative law judge in the present case did not err at any juncture as she followed this procedure.

It is, of course, true that the administrative law judge reviewed evidence that had in large part, although not entirely, been submitted in support of a claim for total

Esposito *v.* Stamford

incapacity benefits under § 31-307 (c) rather than permanent disability benefits under § 31-308 (b). But that fact matters only if the particular evidence establishing the decedent's entitlement to benefits under the former statute cannot also be used to establish his entitlement to benefits under the latter statute. Such is not the case here. To the contrary—and specifically with respect to benefits for the loss of vision—the relevant criteria are the same under these two statutory provisions, and the same evidence that establishes an entitlement to total incapacity benefits, if credited by the fact finder in a proceeding for disability benefits under § 31-308 (b), can establish an entitlement to permanent disability benefits. Section 31-307 (c) provides in relevant part that "[t]he following injuries of any person shall be considered as causing total incapacity and compensation shall be paid accordingly: (1) Total and *permanent loss of sight of both eyes, or the reduction to one-tenth or less of normal vision* . . . ." (Emphasis added.) Section 31-308 (b) identifies injuries that "shall" entitle the claimant to disability benefits, "in addition to the usual compensation for total incapacity," and specifies that "[a]ll of the following injuries include the loss of the member or organ and the complete and *permanent loss of use* of the member or organ referred to . . . ." (Emphasis added.) The scheduled injuries include the "[c]omplete and *permanent loss of sight in, or reduction of sight to one-tenth or less of normal vision* . . . ." (Emphasis added.) General Statutes § 31-308 (b).

The relevant statutory language requiring a finding of permanency is virtually identical in the two statutes, which normally means that the legislature intended the words to have the same meaning. See, e.g., *State* v. *Sabato*, 321 Conn. 729, 747, 138 A.3d 895 (2016) ("[i]n light of the close relationship between [General Statutes] §§ 53a-151 (a) and 53a-151a (a), it is appropriate

Esposito *v.* Stamford

to give the same phrase in each statute the same meaning''); *State* v. *Grant*, 294 Conn. 151, 160, 982 A.2d 169 (2009) (''ordinarily, the same or similar language in the same statutory scheme will be given the same meaning'').

Again, there is no need to decide whether a claimant who is entitled to total incapacity benefits for loss of vision is entitled to permanent disability benefits for loss of vision ''as a matter of law'' because that is neither what the administrative law judge concluded in this case nor what the plaintiff argues before this court. The critical point is simply that the evidence and findings in connection with the award of total incapacity benefits for loss of vision in the present case, and presumably in most cases, will be highly relevant to any subsequent claim seeking permanent disability benefits under § 31-308 (b), particularly in the absence of any evidence that, notwithstanding the finding of a ''total and permanent'' loss of function when incapacity benefits were awarded, the claimant's condition improved thereafter. General Statutes § 31-307 (c) (1).

Neither the majority nor the defendants point to any factual finding that negates the conclusion reached by the administrative law judge; the majority even concedes that the factual findings ''might well'' *support* the conclusion reached by the administrative law judge. The majority observes only that the fact ''[t]hat there was no further updating of the decedent's medical record with respect to his eye injuries between 1995 and his death in 2020 does not mean *as a matter of law* that his condition remained unchanged since 1984.'' (Emphasis added.) Again, no one is contending that permanency has been established as a matter of law. The claim is a factual one, and, as I have indicated, there is abundant evidence—and, as the majority acknowledges, there is at the very least some evidence, which is all that is needed—to support the administrative law judge's conclusion that the decedent's loss of

Esposito *v.* Stamford

vision was more likely than not a permanent condition as of June 9, 1998.

B

I also disagree with the majority's application of our recent decision in *Brennan* in two respects. First, the majority interprets *Brennan* to require a permanent partial disability *rating* to establish that an injury is permanent. It observes that "the record lacks a clear permanent partial disability rating, or an agreement to that effect between the decedent and the defendants that would furnish a basis for the requisite finding of maximum medical improvement." The majority asserts that, "[a]lthough the decedent's physicians characterized his condition as 'one tenth or less of normal uncorrected vision' when he was originally examined and treated between 1982 and 1995, there is no other indication that the physicians determined that that particular degree of vision loss constituted any percentage of maximum medical improvement."

The requirement of a permanent partial disability rating, although of importance in *Brennan*,[14] has no relevance in the present case because the injury in this case involved a *total* (100 percent) disability. On April

---

[14] Brennan explains that a permanent partial disability rating was necessary in that case because the rating establishes "the point at which the *degree* of permanent impairment (loss of, or loss of use of a body part) can be assessed, which will determine the employer's payment obligations (i.e., number of weeks of compensation owed). An employer's payment obligations, then, are not fixed until the establishment of entitlement to permanent disability benefits. . . . This court has recognized that the condition precedent, entitlement to this benefit, 'depends on both the establishment of a permanent disability and the extent of that disability . . . .' " (Emphasis in original.) *Brennan* v. *Waterbury*, supra, 331 Conn. 696, quoting *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 299 Conn. 193. This reasoning has no application when, as here, the claim is for total or complete impairment as defined by statute, i.e., the "[c]omplete and permanent loss of sight in, or reduction of sight to one-tenth or less of normal vision . . . ." General Statutes § 31-308 (b).

Esposito *v.* Stamford

24, 1982, when the decedent sustained the injury at issue, the version of § 31-308 (b) in effect provided that a claimant suffering from "the complete and permanent loss of the sight of one eye, or the reduction in one eye to one-tenth or less of normal vision," was entitled to 235 weeks of benefits for that injury. General Statutes (Rev. to 1981) § 31-308 (b) (7). As I discussed previously, precisely that degree of permanency was an explicit component of the findings made by administrative law judge on the basis of the medical records and related testimony at the two formal hearings held in connection with this matter. No percentage rating was needed beyond the finding that the decedent suffered a reduction to one tenth or less of normal vision in both of his eyes; that finding established a 100 percent disability under the express terms of the statute.[15]

Second, the majority opinion misapprehends the doctrinal distinction between the *vesting* and the *maturation* of benefits under § 31-308 (b). Based on its reading of *Brennan*, the majority characterizes the issue at hand as whether the decedent's right to benefits under § 31-308 (b) had matured: "*Brennan* states that permanency benefits *mature* under § 31-308 only after the degree of permanency is fixed by either an award or an agreement between the parties . . . ." (Emphasis altered.) In another instance, the majority states: "We concluded [in *Brennan*] that permanent disability benefits can mature 'only after the degree of permanency has been fixed by way of an award or an agreement between the parties sufficient to establish a binding meeting of the minds'

---

[15] The majority also suggests that other cases in addition to *Brennan* establish the need for a permanent partial disability rating as a prerequisite to any permanent partial disability award. It cites *Churchville* and *McCurdy* in support. Both cases are distinguishable for the same reason as *Brennan*, namely, because neither involved a permanent injury that entitled the claimant to a fixed number of weeks of benefits.

Esposito *v.* Stamford

and, accordingly, remanded the case to the commissioner for this finding.''[16]

The central issue in the present case involves when benefits under § 31-308 (b) *vest*, not when they *mature.* As I discussed in part I of this opinion, benefits vest when the claimant's injury becomes permanent; they mature when they become payable. The issue of maturation does not relate to *when* the benefits become an entitlement, but *who has the right to receive the benefits* to which the claimant is entitled after death—the estate, or the dependents. *Brennan* did not change our legal standard regarding vesting in any respect. Indeed, we indicated that the benefits at issue in *Brennan* had vested when maximum medical improvement was reached on October 13, 1993. *Brennan* v. *Waterbury*, supra, 331 Conn. 699. Our inquiry was focused on determining whether the claimant's ''disability benefits [under General Statutes § 7-433c] . . . *matured* before his death,'' and, accordingly, we ''remanded for further proceedings to decide the *proper beneficiary* of any benefits due.'' (Emphasis added.) Id., 700. Our conclusion in *Brennan* affected solely our standard regarding maturation, not vesting.

To summarize, I would conclude that the board erred in rejecting the administrative law judge's factual conclusion that the decedent's entitlement to disability benefits under § 31-308 (b) vested no later than June 9, 1998. Our review of an administrative law judge's factual findings in this context is deferential, and there is

---

[16] Although the majority indicates that it disagrees with my reading of *Brennan* in this respect, the language it quotes from *Brennan* actually supports my point. *Brennan* explains that the benefits do not vest (or accrue, a term ''equivalent to vesting'') until the date when the claimant reaches maximum medical improvement. *Brennan* v. *Waterbury*, supra, 331 Conn. 695 n.17.

350 Conn. 209      OCTOBER, 2024      251

Esposito *v.* Stamford

abundant evidence in the record to support the 2022 findings and award.

For the foregoing reasons, I respectfully dissent.[17]

_____

---

[17] The two remaining issues are (1) whether the plaintiff, as the decedent's widow, is the decedent's presumptive dependent and therefore entitled to the vested permanent disability benefits, and (2) whether the defendants were entitled to a credit against the vested permanent disability benefits for the total incapacity benefits that were paid after the June 9, 1998 award. Because the majority concludes that the decedent, at the time of his death, had no vested entitlement to permanent disability benefits under § 31-308 (b), it does not reach these issues. Although I am of the opinion that the right to permanent disability benefits had vested, I also choose to leave these subsidiary issues unaddressed because the case should be remanded to the board to analyze those issues in the first instance with the benefit of the legal principles set forth in this opinion.